## AUSTIN vs. BURGESS and others.

USURY.   (1) *Statute not retrospective.*   (2) *Effect of retrospective statute.*   (3) *Usurious contracts, before ch. 93 of 1871, absolutely void.*

1. Ch. 93, Laws of 1871, and ch. 157, Laws of 1872 (relating to usurious

contracts), do not affect contracts made prior thereto, although the language of those statutes is *general*, and susceptible of a retrospective as well as of a prospective construction.

2. A subsequent statute, even if retrospective in terms, cannot give validity to a usurious contract made under a law declaring such contract *void*.

3. Under the law of this state, prior to ch. 93 of 1871, a usurious contract was absolutely void, and not merely voidable. A *dictum* in *Riley v. Gregg*, 16 Wis., 666, explained.

APPEAL from the Circuit Court for *Sauk* County.

Action to reform a deed and mortgage, and foreclose the mortgage. Defense, usury. The defendants, *Peleg Burgess* and *Lucretia Burgess*, alleged, that on the 8th of July, 1868, *Peleg Burgess*, by L. J. Frank as his agent, borrowed $25 of the plaintiff, *Lucretia Austin ;* that said Frank, at the same time, borrowed of plaintiff $100 ; that for the use of the $125, until October 1st following, it was usuriously agreed to pay $36, and interest on the sum so borrowed, at the rate of ten per cent. ; that said Frank then gave a note payable October 1st following for said $36, usurious interest ; that one-fifth of said $36 was to be paid by *Peleg Burgess* for the use of the $25 borrowed for him ; that on September 15, 1868, *Peleg Burgess* borrowed of plaintiff the further sum of $100, for the use of which, until November 1st thereafter, it was then usuriously agreed that said *Burgess* should pay $15 over and above ten per cent. ; that plaintiff accordingly advanced *Burgess* said sum of $100, and the latter gave plaintiff his note for that amount (signed also by Frank), payable November 1, 1868, with interest at ten per cent., and said $15 usury was included in a note for $60 given by *Burgess* and Frank to the plaintiff, payable November 1, 1868, at ten per cent. interest ; that defendants were unable to pay said claims when due, and that, to secure the payment of said $25 and the one-fifth of said $36, usury money, and interest on the said sums as provided in said note, and also to secure the payment of said $100 and the said $15 note, the defendants, on December 12, 1868, executed to the plaintiff

a note and mortgage for $300, being the instruments in suit. The court found, in substance, that the allegations of the answer were true, and that no tender of the principal had been made at any time; that the business was transacted on the part of the plaintiff by her husband, who acted as her agent in loaning and taking care of her moneys, and to whose judgment and discretion she entrusted all business of this kind. It thereupon held, that no tender of the principal was necessary, and that defendants were entitled to judgment declaring the note and mortgage void, with costs. Judgment accordingly; from which the plaintiff appealed.

*G. Stevens*, for appellant:

1. The defense of usury should be proved beyond a reasonable doubt. *Dole v. Northrup*, 19 Wis., 249; *Beach v. Fulton Bank*, 3 Wend., 587. 2. Usury is a question of intention, and it should be proved that the plaintiff knew of and intended to take usury. In this case there is no evidence that *Mrs. Austin* ever knew of the usury. *Fay v. Lovejoy*, 20 Wis., 407; *Condit v. Baldwin*, 21 N. Y., 219; *Bell v. Day*, 32 id., 165; *Livesley v. Lasalette*, 28 Wis., 38. 3. Before defendants are entitled to any benefit from their plea of usury, they must prove a tender of the principal sum loaned. Sec. 6, ch. 61, R. S., was reenacted by ch. 157, Laws of 1872, and is applicable to this case, being a law governing the remedy only. *Towslee v. Durkee*, 12 Wis., 480; *Platt v. Robinson*, 10 id., 128; *Root v. Pinney*, 11 id., 84; *Simonton v. Vail*, id., 90; *Hasbrouck v. Shipman*, 16 id., 296. The cases of *Newman v. Kershaw*, 10 Wis., 333, and *Morton v. Rutherford*, 18 id., 298, relied upon by the respondent, are not applicable to this case.

*J. Mackey*, for respondent:

1. No part of the note or mortgage can be upheld; " a contract void in part is void *in toto*." 2 Parsons on Bills, 420; 37 N. Y., 444, 446; Tyler on Usury, 381–2. 2. The defendants in this case are not asking the aid of a court of equity, but are resisting the enforcement of an illegal contract. *Newman v.*

*Kershaw*, 10 Wis., 349; *Fanning v. Dunham*, 5 Johns. Ch., 122; 1 Story's Eq., § 301. 3. If a party claiming the right to recover a debt has to trace his right through an illegal contract, he cannot recover. 31 Wis., 252–254. A note void in its inception, and so declared by statute, cannot by subsequent legislation become valid. *Gorsuth v. Butterfield*, 2 Wis., 237, 242; *Root v. Pinney*, 11 id., 84, 87; *Morton v. Rutherford*, 18 id., 298, 311. Even if the law is to be regarded as creating a forfeiture, the money paid cannot be recovered. 65 N. C., 84; *Story v. Kimbrough*, 33 Ga., 21; *Sprecker v. Wakeley*, 11 Wis., 432. 4. Ch. 157, Laws of 1872, should not have a retroactive effect. Statutes are not so construed unless the intention that they should so operate is unmistakable. *Finney v. Ackerman*, 21 Wis., 269; *Seamans v. Carter*, 15 id., 548; 11 id., 422; 7 Johns., 499.

RYAN, C. J. We do not propose to discuss the facts tainting the note and mortgage in this case with usury. The usurious interest was reserved by the husband, payable to the wife, within her authority to him as her agent, and affirmed by her in the attempt to enforce it in this suit. The evidence of these facts appears to us overwhelming, and we do not see how the court below could have found otherwise.

The usury taints all the dealings of the parties disclosed in the record; and the only question for us is the effect on the final contract, as a whole.

The transactions ending in the note and mortgage in suit, began in July and closed in December, 1868.

When made, the contracts were all governed by ch. 160, Laws of 1859. That statute declares all usurious contracts void. This suit, however, was not brought until January, 1873. And in the meantime the law of usury was changed.

Ch. 93, Laws of 1871, made usurious contracts valid for the principal, without interest. And ch. 157, Laws of 1872, revived sec. 6 of ch. 61, R. S., requiring tender of the principal as a condition of the defense of usury.

And it is claimed for the appellant that these statutes are retrospective ; and that, therefore, the respondents could make the defense of usury to the interest only ; and to that, only upon proof of tender of the principal.

The language of the acts of 1871 and 1872 is general ; equally susceptible of retrospective or prospective construction.

This court has several times had occasion to declare the general rule on the retrospective operation of statutes. " It is a well settled rule of construction, that statutes are not to be construed retrospectively, or to have a retroactive effect, unless it shall clearly appear that it was so intended by the legislature ; and not even then, if such construction would impair vested or constitutional rights." *State v. Atwood*, 11 Wis., 422. And " that intention is not to be assumed from the mere fact that general language is used, which might include past transactions as well as future. Statutes are frequently drawn in such a manner. Yet such general language is held to have been used in view of the established rule, that statutes are construed as relating to future transactions and not to past." *Seamans v. Carter*, 15 Wis., 548 ; *Finney v. Ackerman*, 21 id., 268, and other cases cited in Vilas & Bryant's note to the former. And it will be seen later that this rule has been expressly applied to statutes of usury.

The effect of retrospective laws on usurious contracts has given rise to some controversy ; and there is some conflict and confusion of authority on the question, as may be seen in elementary works on the subject. In such cases as this, we cannot think that there is, in principle, much room for doubt. And, though the precise question here has not been directly adjudged by this court, yet the principle on which it must turn has been ; and the very question has been considered and almost determined, in the light of principle. And so, when the exact point is now first presented, we feel not only at liberty but constrained to turn aside from the conflict of authority elsewhere, and to settle the rule in this court on sound principle.

Austin vs. Burgess and others.

A special reason has sometimes been assigned for not applying the general rule, that statutes are not to be construed retrospectively, to subsequent statutes mitigating the consequences of usury. It has been said that the denial of the right to recover the principal to the usurer, is a penalty; and that the repeal of a statute imposing such a penalty falls under another general rule, and takes away the right to enforce the penalty; and so a subsequent mitigation of the penalty limits the right to enforce it to its modified form.

But we cannot think that a statute simply declaring a usurious contract void imposes any penalty for subsequent legislation to mitigate or release. Such a statute puts usurious contracts on the same footing as other contracts forbidden by law: makes them equally *pacta quæ non sunt observanda*, so that they are in legal effect not contracts at all. There may be also penalties for the usury, which subsequent statutes may or may not release or mitigate. But the avoidance of the contract of itself works no penalty, constitutes no penalty. It simply classes the contract with others *contra bonos mores.*

What we hold to be the true doctrine on this point, applicable not only to the contracts declared void by statute, but also to contracts usurious by simple prohibition, we find well stated in *Dill v. Ellicott*, Taney's C. C. R., 233. Speaking of the incapacity of the usurer, under such a prohibition, to sue on the contract, the great chief justice says: " His incapacity to maintain an action upon it is no forfeiture or penalty, for he acquires no right under it, and therefore there is nothing to forfeit. The money he loans is not forfeited; for if he chooses to rely on the promise of the borrower, and the borrower repays him the money, he may lawfully keep it. It is not forfeited to the state, nor to any one else. But a court of justice cannot lend its aid to recover it, because the contract for the loan is one entire thing, and consequently is altogether invalid or void; and it would be contrary to the duty of a court of justice to assist a party in consummating an act which the law forbids."

This is the rule applied to usurious contracts prohibited only; *a fortiori*, applied to contracts declared void by the statute.

And such has always been the construction given by this court to statutes declaring usurious contracts void; following the language of the statute, and holding such contracts void, not voidable only. *Lee v. Peckham*, 17 Wis., 383; *Morton v. Rutherford*, 18 id., 298; *Meiswinkle v. Jung*, 30 id., 361. There is, indeed, a *dictum* of DIXON, C. J., in *Riley v. Gregg*, 16 Wis., 666, which has a look inconsistent with this rule. He says: ".Usurious agreements are not so absolutely void, that no rights whatever can be founded on them. They are void only at the option of the borrower and those in privity with him. Not being within the pale of the law, he may satisfy or repudiate at his pleasure. But not so with the party taking the usury. Looked upon as the author of the wrong, he is precluded, upon general principles of public policy, from setting it up to defeat any rights which the other party or those in legal privity with him may claim by virtue of the contract." It might be inferred from this that a usurious contract declared void by law, is voidable only at the election of the borrower. We all understand the distinction between void and voidable contracts. But, speaking of a contract not voidable but void, it is difficult to comprehend how it can be more or less void, how its void nature can rest in degrees, or be divisible, or how— being void — it is a contract at all, for any purpose. But we take the true meaning of the chief justice to have been, that usurious contracts are distinguishable from contracts *quum dantis æque et accipientis turpitudo versatur;* and that though such a contract be void, yet, being void for the wrong of the usurer, he may be equitably estopped from insisting on his own greater wrong against his less culpable victim. This would be consistent with the rule that the contract is void, and we hold this to be the true construction of the rule in *Riley v. Gregg*.

And it is very difficult to comprehend how subsequent legis-

lation could have effect to validate a void contract, which is simply making a contract where there was before no contract. We take it that subsequent legislation has full control of the remedies of previous contracts, but not of contracts themselves to vary their import or effect, by either impairing or enlarging their obligation; far less of instituting contracts for parties by making valid contracts void before.

There are passages in the opinion of the court in *Satterlee v. Matthewson*, 2 Peters, 380, indicating that there may be legislative power to declare valid a void contract. But the only question in the case was one of jurisdiction to review the judgment of a state court; and the only point decided is, that a law declaring valid a void contract does not come within the prohibition of state laws impairing the obligation of contracts. And though there are improvident expressions in the reasoning of the court, the point that state legislatures have power to validate void contracts was neither in the case nor passed upon by the court.

*Gorsuth v. Butterfield*, 2 Wis., 237, was an action on a note for liquors sold while a statute was in force prohibiting recoveries for liquor bills or securities given for them, and declaring such securities void. The statute was repealed before the action was brought. The court says: "This note was given while the law of 1850 was in full force, and was therefore absolutely void. It [the statute] affected not the remedy merely, but the cause of action itself. The repeal of the statute of 1850 by the act of March 8, 1851, * * * * could not give vitality to an instrument absolutely void at the time of its execution. Being void in its inception and execution, and so declared by positive statute, a repeal of that act of the legislature could not give it vitality." This case is considered, and this doctrine affirmed and repeated, in *Brandeis v. Neustadtl*, 13 Wis., 142.

In *Root v. Pinney*, 11 Wis., 84, it is said: "The transaction occurred while the usury law of 1856 was in force, and of

course, so far as the validity and effect of the contract is concerned, it is to be determined by that law." And again: "This latter act [the usury law of 1859] contains a clause providing that it should not be construed to interfere with contracts theretofore made, in accordance with existing laws, which of course it could not do." And the court distinguishes between the provision requiring tender of the principal, which, as going to the remedy only, might be changed by subsequeut legislation, and the provision making the usurious contract valid for the principal, which, as going to the effect of the contract, could not be affected by subsequent legislation.

In *Lee v. Peckham*, 17 Wis., 383, where the question was upon notes given under the act of 1859 in renewal of notes given under the act of 1856, held to be usurious, the court says: " It follows from this, therefore, that the notes upon which the judgments were entered were void. What is the consequence, or how far will a court of equity go, under the circumstances, in granting relief? This question is to be determined by a reference to those principles upon which a court of equity proceeds in these cases. And in the first place, we suppose it is an elementary principle, that a party resorting to a court of equity for relief against a usurious contract will be compelled to do equity. But it may be said that, by the sixth section of the act of 1859, it is provided that the court shall not require or compel the payment of the principal sum as a condition of granting relief to the borrower in any case of usurious loan forbidden by the act. This is true ; and did the transaction begin and end under the law of 1859, the judgment must be set aside without conditions." But because the notes, void under the act of 1859, were given for a debt contracted under the act of 1856, which made the contract valid for the principal, the court made payment of the principal sum borrowed a condition of equitable relief against the judgment recovered on the notes.

So in *Morton v. Rutherford*, 18 Wis., 298, the security was given under the act of 1851, which declared a usurious contract

vo̦id, but it was claimed that the act of 1856 made it valid for the principal. The court says: " Subsequent legislation is relied on to show that the defense of usury is not available. By the law in force at the time the contract was made, it was usurious and void. To the same effect was the law when this suit was commenced. And by the law of 1856, a usurious contract was declared valid and effectual only to secure the principal sum loaned. But how this latter enactment, even if it attempted it, could render valid an antecedent contract which was void, we do not comprehend. But the law of 1856, which has been abrogated, can have no bearing on the question." Here the court just missed the question now before us, and almost decided it as we do now.

And finally in *Meiswinkle v. Jung*, 30 Wis., 361, the same principles are again recognized and affirmed.

So that, in either aspect of the question, it is hardly an open one in this court. And our views of it, upon principle, are in perfect accord with all the rulings of this court on usurious contracts. And, for the reasons assigned and upon the authorities cited, we hold, first, that ch. 93 of 1871, and ch. 157 of 1872, are not retrospective and have no effect on the antecedent contract in question in this cause; and secondly, that a subsequent statute, even if retrospective in terms, could not operate to give validity to a usurious contract made under a previous law declaring usurious contracts void.

The judgment of the court below must be affirmed.

*By the Court.*—Judgment affirmed.