TRUMPF, Respondent, vs. SHOUDY and another, Appellants.

*November 15—December 4, 1917.*

*Contracts: Exchange of lands: Unconscionable bargain: Validity: Public policy: Scheme to defraud third persons: Evidence: Measure of damages.*

1. Defendants, who were experienced real-estate dealers, negotiated with plaintiff for an exchange of property in Wisconsin for two tracts of land in Texas in which they were interested. They represented that the smaller of such tracts (280 acres) was worth $150 per acre, but plaintiff was doubtful about its marketability, and to induce him to make the contract of exchange defendants, as a part thereof, agreed to sell said tract within a year for $150 an acre. They were to have any sum received in excess of that price and also a commission of $1,000 for making the sale. Plaintiff agreed to assist in making the sale. Defendants also gave a bond to secure full performance by them of the contract. No part of the 280 acres was sold, and in an action on the bond plaintiff claimed to recover the difference between $150 per acre and the actual market value of the tract, which value the jury found was $16 per acre at the end of the year. Defendants claimed in their answer and at the trial that the tract was worth $150 per acre. There was little evidence and no finding as to the value of the other tract. Nothing in the record indicates that defendants were in any way misled by plaintiff. *Held,* that it cannot be said that the contract was unconscionable and for that reason not to be enforced.

2. It appearing that the value of the 280 acres depended largely upon their availability for irrigation, which was a disputed question at the trial—the jury evidently concluding that they were not so available and were therefore of comparatively small value—and there being no evidence that plaintiff supposed, at the time the contract was made, that said tract was worth less than $150 per acre, and no evidence that he had any purpose to defraud third persons, the contract, being fair on its face, can-

not be held to be void as against public policy on the ground that by its terms the parties were joined in a fraudulent scheme to sell to third persons at a price of $150 or more per acre land which was worth but $16 per acre.

3. The term "public policy" is one of vague and uncertain meaning; and the power to declare a contract void as being against public policy should be exercised only in cases free from doubt.

4. It not appearing upon the face of the contract that any wrongful or illegal act was contemplated, the mere fact that plaintiff, being doubtful as to the marketability of the lands and not satisfied as to their value, protected himself against loss by means of the contract, does not establish the fact that he was a party to a scheme or conspiracy to defraud third persons.

5. The question as to the validity of such contract must be determined as of the date it was made; its legality cannot be affected by reason of facts subsequently appearing and not previously known, or by what the parties or either of them did in attempting to carry out and perform the contract.

6. The proper measure of plaintiff's damages for defendant's breach of the contract was the difference between the agreed selling price of $150 per acre and the actual value ($16 per acre) of the land at the end of the year in which it was to be sold, less the $1,000 commission which defendants were to receive.

MARSHALL, KERWIN, and ESCHWEILER, JJ., dissent.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action on contract for damages. Plaintiff was the owner of a hotel property located in the city of Madison, upon which there was a first mortgage of $30,000, and a second mortgage of $35,000 owned by the Hausmann Brewing Company. Defendants were interested in two tracts of land situated in Hidalgo county, Texas, one 389 acres in extent, known as the Edinburg tract, and the other 280 acres, known as the Mercedes tract. The defendants were real-estate dealers living at Rockford, Illinois. Plaintiff was engaged in operating his hotel. Negotiations were opened between the parties looking to an exchange of these properties, as a result of which the plaintiff, a representative of the Hausmann Brewing Company, the defendants, a man by the name of O'Hora, and a dealer in Texas lands by the name of Schulz, went to

view the lands in Texas. It was understood that any dis-
position of the hotel property made by the plaintiff must be
subject to the approval of the Hausmann Brewing Company.
As a result of this visit and further negotiations, the parties
on July 21, 1913, entered into a contract for the exchange of
their respective properties. This contract, however, was
never approved by the Hausmann Brewing Company and
was never carried out. Further negotiations were had, with
the result that on September 6, 1913, the plaintiff and de-
fendants entered into a contract expressly abrogating the con-
tract of July 21, 1913, and providing for an exchange of the
properties, by the terms of which the defendants were to
take the hotel property subject to a mortgage of $30,000 and
were to convey the two tracts of land in Texas to the plaint-
iff, the land to be likewise subject to a mortgage of $30,000,
and as a part of the contract of exchange the defendants
agreed to sell the Mercedes tract of 280 acres within a period
of one year for $150 an acre, it being agreed that the de-
fendants should have any sum received in excess of $150 an
acre and that they should receive a commission or compensa-
tion of $1,000 for making the sale. By the terms of the con-
tract plaintiff agreed to assist in making the sale, to have
certain roads cut, and to do certain other things not material
here. Plaintiff being doubtful as to the value of the Mer-
cedes tract, the defendants, in order to bring about the ex-
change, entered into a bond in the penal sum of $40,000 con-
ditioned that they would perform fully and completely and
in every particular each and every condition, agreement,
covenant, matter, and thing by them to be performed in the
contract of September 6th. The contract of exchange was
carried out, a year elapsed and no part of the 280-acre tract
was sold, and plaintiff brings this action upon the bond,
claiming that he is entitled to recover the difference between
the agreed selling price of $150 an acre and the market value
of the property. The defendants, with whom was joined

one O'Hora, who died insolvent since the commencement of the action, answered and set up as a defense that the real contract between the parties was the contract of July 21, 1913; that they entered into the contract of September 6th and gave the bond of even date therewith for the sole purpose of enabling *Trumpf* to make the necessary arrangements with the Hausmann Brewing Company to effect an exchange of the properties, and that it was agreed between the defendants and plaintiff that the contract of September 6th was not to be enforced against them; that *Trumpf* had not performed his part of the contract of September 6th; that he had misrepresented the value of the hotel property; and asked to have the contract of September 6th reformed so as to express the true agreement of the parties, and demanded judgment on the counterclaim, setting up the facts fully, for $40,000. The case was submitted to the jury on a special verdict, in response to which the jury found as follows:

1. That the plaintiff did before September 6, 1914, give such time as he reasonably could to securing buyers and in assisting in selling the 280 acres near Mercedes.

2. That the fair market value of the 280-acre tract near Mercedes, on September 6, 1913, was $15 per acre.

3. That the fair market value of the 280 acres of land near Mercedes on September 6, 1914, was $16 per acre.

4. That before the contract and bond were signed plaintiff did not state to the defendants that the bond was never to be enforced and that if they did not sell the 280 acres of land near Mercedes before September 6, 1914, no liability would ever attach to the defendants because of the signing of the bond dated September 6, 1913.

Question 5 not answered.

6. That plaintiff did not, after the bond and contract of September 6, 1913, had been executed by the defendants, state to the defendants that he would make no claim against them and that the bond should be canceled and discharged if the 280 acres of land near Mercedes were not sold within the year.

7. That the plaintiff did not, before the contract of September 6, 1913, was signed, represent to the defendants:

(a) That the Trumpf Hotel was worth $85,000 in cash;

(b) That the Trumpf Hotel was worth $100,000 in trade;

(c) That he was offered $75,000 in cash for the Trumpf Hotel;

(d) That he had a *bona fide* purchaser for the Trumpf Hotel who was ready, able, and willing to pay $65,000 therefor at any time;

(e) That the Trumpf Hotel was a good paying property on the basis of a valuation of $100,000;

(f) That the Trumpf Hotel was a solid brick building.

Questions 8 to 19 inclusive were not answered.

20. That the Hausmann Brewing Company did not approve of the contract of July 21, 1913, and consent that the properties described therein might be exchanged upon the terms therein stated.

21. That the fair market value of the Trumpf Hotel on September 6, 1913, was $65,000.

Defendants moved for judgment notwithstanding the verdict, to set aside the answers to questions in the special verdict, to change the answers to questions in the special verdict, and for a new trial, all of which motions were denied. Plaintiff had judgment on the verdict for the difference between the agreed selling price of $150 an acre and the value of the land on September 6, 1914, $16 an acre, less the $1,000 commission, being a total of $36,520, damages, and costs and disbursements. Defendants appeal.

*W. H. Frawley* of Eau Claire, for the appellants.

For the respondent there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Ralph W. Jackman.*

ROSENBERRY, J. Appellants assign error on the admission and rejection of testimony and in several particulars which we will not discuss here. Suffice it to say that we have carefully considered them and find no prejudicial error.

It is contended that the contract made by the defendants is unconscionable and therefore should not be enforced. It is pointed out that the contract which the defendants made was to sell the Mercedes tract for $150 an acre; that the jury found that on September 6, 1914, it was worth but $16 an acre, and that to hold the defendants for the difference less the $1,000 commission is to hold them to a bargain which no man in his senses and not under delusion would make. The premise is wrong. Plaintiff parted with his property upon the representation of the defendants that the Mercedes tract was worth $150 an acre and marketable. The character of the contract, therefore, cannot be determined solely with reference to the contract price and the actual market value of the land, but must be considered in its relation to the entire transaction. There is no finding and very little evidence as to the value of the Edinburg tract. The defendants are experienced real-estate men. There is nothing in the record to indicate that they were in any way misled by the plaintiff. They claimed at the time the trade was made, claimed in their answer and throughout the trial that the land was worth $150 an acre. Plaintiff would not effect an exchange whereby he received this property except upon written assurance given in the form of a contract and bond by the defendants as to the value and marketability of the land. It cannot be said upon this record that the contract sued upon is an unconscionable one and for that reason not to be enforced.

Appellants make the further claim that the contract is void as against public policy for the following reason: That by the terms of the contract the plaintiff and the defendants were joined in an enterprise which, if the contract had been performed, would have resulted in the sale of land to third parties at a price of $150 an acre or more, the market value of which was in fact, as found by the jury, but $16 an acre. Citing *Morrison v. Bennett,* 20 Mont. 560, 52 Pac. 553, 40 L. R. A. 158; *Twentieth Century Co. v. Quilling,* 130 Wis. 318, 110 N. W. 174; *McNamara v. Gargett,* 68 Mich. 454,

36 N. W. 218; *Knight v. Linzey,* 80 Mich. 396, 45 N. W. 337; *Schmueckle v. Waters,* 125 Ind. 265, 25 N. E. 281; *Merrill v. Packer,* 80 Iowa, 542, 45 N. W. 1076; *Shipley v. Reasoner,* 80 Iowa, 548, 45 N. W. 1077; *Hubbard v. Freiberger,* 133 Mich. 139, 94 N. W. 727. Upon the strength of these cases we are asked to declare the contract void as against public policy.

The term "public policy" is admittedly one of a vague and uncertain meaning, and the power to declare a contract void as being against public policy should be exercised only in cases free from doubt. 6 Ruling Case Law, § 119, p. 710; 1 Page, Contracts, § 326.

In this case there is no evidence to show that the plaintiff, *Trumpf,* supposed at the time he entered into the contract that the land was of less value than $150 an acre. He was doubtful about its marketability, and his circumstances were such that he could not make the exchange unless those who stood back of him could be assured that the property he was receiving could be realized on. While a question of fact is involved which was not presented to the jury in the form in which it is here presented, under the established rules of law we must treat the case as if it were found adversely to the claim of the appellants. Sec. 2858m, Stats. The jury by its finding expressly negatived the claim of the defendants that the contract was entered into for the sole purpose of enabling the plaintiff to procure the consent of his creditors to the exchange. This in effect negatives the further claim that the contract was a fraudulent scheme entered into by the plaintiff and the defendants by means of which third persons were to be defrauded. Upon its face the contract is fair and contemplates no illegal transaction, and in that respect this case is clearly distinguishable from the *Bohemian Oats* and *Coupon Cases, supra,* cited to our attention. In those cases it appeared upon the face of the contracts that if carried out a fraud upon third persons must be the necessary result. No such situation is presented by the facts in this case. The

jury and the trial court have negatived any unlawful purpose or intention on the part of the plaintiff. While upon its face it is a contract to sell to third persons, under the circumstances of this case it was in effect one which warranted to the plaintiff the value and marketability of the lands which he received in exchange for his property. Upon his part the contract has been fully performed, as the court and jury found. If the defendants at the time of the exchange had represented that the lands were worth $150 an acre when they were in fact worth but $16 an acre, plaintiff would clearly have a right to recover the difference between the value as represented and the actual value. He recovers no more in this case. The defendants in effect reduced their representations to writing, entered into a contract by which the lands were to be realized upon at the price stated by them, and gave their bond to insure performance of the contract. The purpose and object of the plaintiff in entering into the contract was not to defraud the public, but to secure himself against loss, and the mere fact that it now turns out that as a result of his relying upon the misrepresentations of the defendants he was led into making a contract which if carried out might have resulted in injury to third persons, does not make the contract void or prevent its enforcement. Where it does not appear upon the face of the contract that a wrongful or illegal act is contemplated, it must be established as a fact that the contract is a part of a scheme or conspiracy to defraud. The mere fact that plaintiff, after an inspection of the lands, was doubtful as to their marketability and not satisfied as to their value, and protected himself against loss by means of the contract in question, does not establish the fact that he was a party to a fraudulent scheme or a conspiracy to defraud third persons. The fact that in the light of circumstances now known but not then known, had the contract been performed an injury to third persons might have resulted, does not, as between the parties, vitiate the contract.

12 L. R. A. N. S. 594; *Gregory v. Wendell*, 40 Mich. 432. The value of the lands in question depended very largely upon their availability for irrigation. Some engineers think they are available, some think they are not. The jury evidently took the view that they were not available for irrigation and were therefore of comparatively small value.

The question of whether or not the contract was a valid one must be determined as of the date it was made; its legality cannot be affected by reason of facts subsequently appearing and not previously known, or by what the parties or either of them did in attempting to carry out and perform the contract. The contract was fair upon its face. There is no evidence tending to connect the plaintiff with any conspiracy to wrong or defraud third parties and no evidence which indicates that he had any such purpose or intention. The defendants are experienced real-estate men, familiar with the real-estate business, and if they were mistaken as to the value of the lands which they gave in exchange for the hotel property, we see no reason why their contract, which in effect warrants their judgment, should not.be enforced.

It is claimed that the court in applying the rule of damages laid down in *Dunn v. Mackey,* 80 Cal. 104, 22 Pac. 64, 66, committed error. We think the court applied the correct rule of damages to the facts in this case. If it be contended that the defendants are unfairly dealt with by reason of the fact that they are compelled to pay the difference between the price at which they agreed to sell these lands and the value found by the jury, they could very easily have relieved themselves from that situation by purchasing or causing the same to be purchased for their account before the expiration of the year.

*By the Court.*—Judgment affirmed.

EschWEILER, J. (*dissenting*). I think the permitting of this judgment for damages to stand is establishing a danger-

ous precedent and is a departure from what has heretofore
been the steady course of this court both as to the measure of
damages and in denying relief to persons who come into
court relying upon a contract which is contrary to good
morals and public policy.

It is suggested in the majority opinion in this case that
plaintiff parted with his property upon the representation of
the defendants that the Mercedes tract of 280 acres was
worth $150 an acre and marketable; and further, in effect,
that this contract was a guaranty by defendants to plaintiff
that this tract was of such value and marketable.   The con-
tract itself, however, does not say so.   It was drafted by an
attorney for the plaintiff, and expressly provided that the
defendants "shall sell the said 280 acres of land for the said
*Ernest Trumpf* within the said period of time [namely, in
one year], at the rate of not less than $150 per acre."   It
further provided in paragraph "J" of the contract for a com-
mission of $1,000 to be paid or allowed by the plaintiff for
the sale of his property.   So that the language of the con-
tract itself plainly provides that the parties contemplated,
not a purchase by the defendants or a guaranty of price, but
a sale by the three parties to others than defendants.   The
plaintiff agreed in the contract to devote a reasonable amount
of time and effort of his own in assisting such sale, and the
first question in the special verdict as set forth in the state-
ment of facts shows that the jury expressly find that he did
give such time as he reasonably could to securing the buyers
and assisting in selling the 280 acres.   So that not only does
the contract itself provide that it is a selling contract, but
the plaintiff himself, in the most unmistakable way, treated
it as such, and should be bound by such treatment of it and
by its language.   According to his own statement he did de-
vote his time almost daily for the year in trying to dispose
of the property.   He caused to be sent out over his own name
as agent circular letters with reference to this property and

also advertised the same in country newspapers. These circulars and advertisements picture the property to be disposed of in the most extravagant and alluring terms and in a manner that would have done credit to the late lamented Colonel Sellers. He describes the valley in which the property is found, with commendable reticence, to be very nearly as fertile as lands in Egypt on the river Nile; that land procurable at $5 to $10 an acre ten years before is now selling for $200 per acre in its wild state, and when improved for a great deal more; that this was the ideal farm land, netting the farmer from $50 to $500 per acre, and yet where labor was to be procured at from fifty cents to $1 a day and the laborers board themselves; that he had seen as high as 100 bushels of corn per acre taken from a field of forty acres. He suggests that the friends of the recipients of the circulars be permitted to read them, thus plainly indicating that he was reaching out into a broad field for such sale.

On the trial plaintiff's counsel expressly takes the position that this was not an action on the ground of false representations by the defendants as to the value of this property. On the plaintiff's adverse examination he expressly states that at the time he examined the property prior to the proposed contract in July he did not think that that tract was the right kind of land. He did not think it would sell. He did not rely on what the defendants told him in regard to that land. He did think and believed that the 389-acre tract was better land than the other and he thought that that piece could be sold for $150 an acre. He did not place any particular value at that time on this Mercedes tract and, though repeatedly asked, he cannot tell what valuation he placed upon it at the time. He did not figure on any basis, in making the contract, on the price of that 280 acres. So that from his own testimony he could not have relied upon a representation by defendants, if any was made, as to the value of the land, even if it be conceded that such a representation

were one of a nature upon which an action for fraud or deceit could be predicated.

It is, however, immaterial what name is used to describe the contract between the parties. This is nothing but an action by plaintiff against the defendant to recover damages for the breach of the written contract of September 6th and is not founded upon any claim of fraud.

As measure of damages the judgment awards the plaintiff the difference between the $16 an acre, being the value found by the jury to exist at the expiration of the year after the date of the contract, and the $150 per acre, the selling price specified in the contract; and in addition to that the plaintiff retains the land itself. In an action upon a contract the question of damages for its breach is solely one of indemnity. *Barnes v. Brown,* 130 N. Y. 372, 384, 29 N. E. 760.

If there be any doctrine in the law of damages that seems to be fairly and firmly established in this state it is that for a breach of contract the limit of recovery is such damages as may be reasonably considered to have been in contemplation of the parties at the time of the making of the contract as the probable result of the breach of it. *McLennan v. Church,* 163 Wis. 411, 422, 158 N. W. 73.

This means, I take it, that what may reasonably be considered to have been in contemplation of the parties at the time of the making of the contract is in effect written in, by implication of law, to the contract itself as the standard or measure by which to determine, when the contract is breached, the damages for such breach. If $15 or $16 was the fair, reasonable market value of the land on September 6, 1913, and the following year, when the contract is relied upon by the plaintiff for the purpose of recovering $134 an acre against the defendants as damages for its breach under the standard recognized by this court, it seems to me a strange rule of law or logic that prevents it being considered as within the contemplation of the parties as the fair market value of the property when the effect of such a contract upon the

general public, who were the object of it, is to be considered. The plaintiff ought not be permitted to have this fair market value of the property considered as in contemplation of the parties when they made the contract, when he relies upon it for the purposes of his recovery of such enormous damages as compared to its real value as shown by him, and then insist that the court shall shut its eyes to such fact and the finding of the jury thereon when the court is required to scrutinize the same contract to determine, of its own right and to protect its own dignity, whether or not such a contract is contrary to public policy. The result of sustaining this measure of damages is in effect to say that there was, by implication, written into the contract a provision to the effect that, contemplating at the time we make this agreement that the fair and reasonable value of this 280-acre tract is $15 per acre, we will, the three of us, undertake to dispose of it to whomsoever we can induce to buy it at a price that shall be no less than sufficient to return us the $15 tenfold. For if the parties are not chargeable with knowledge, as of the time of the making of the contract, that it was worth but $15 or $16 an acre, how can it be held that this value suddenly pops up when damages are to be assessed between the parties for a breach of it, and yet is dormant or nonexistent when considering the effect this same contract would have upon the general public, for whom it was loaded and at whom it was aimed?

If they should be chargeable with knowledge of the vast difference in price between $15 and $150 per acre for land in the vast state of Texas, where if anywhere land can be considered nearer a superfluity than a monopoly, then it must follow that to agree to dispose of it at that maximum price on a necessarily credulous and gullible public is a scheme to defraud, and a contract requiring for its fulfilment such necessary legerdemain or peculiar financial ability ought not to have the stamp of approval.

This contract is not like those in which there is an agree-

ment by which the vendor gets back that with which he parted by his agreement to repurchase upon demand, as in the case of *Vohland v. Gelhaar,* 136 Wis. 75, 116 N. W. 869, where an agreement to buy back at $1 per share stock sold at fifty cents per share was upheld, or to buy back corporate stock at the same price at which it was sold, as in *Hankwitz v. Barrett,* 143 Wis. 639, 128 N. W. 430, the doctrine of these cases being again recognized in *Korrer v. Madden,* 152 Wis. 646, 649, 140 N. W. 325.

It makes no difference that the defendants themselves claimed on the trial, or even assert in this court, that the lands in question were as a matter of fact worth $150 per acre, or that the question of fraud was not pleaded. The court does not listen to the one nor wait for the other, but acts of its own accord and with no other promptings than to uphold the dignity of the law. *Wight v. Rindskopf,* 43 Wis. 344; *Rock v. Ekern,* 162 Wis. 291, 295, 156 N. W. 197; *Decker v. Becker,* 143 Wis. 542, 128 N. W. 67; *Kreamer v. Earl,* 91 Cal. 112, 27 Pac. 735; *Boyd v. Topham,* 47 Utah, 224, 152 Pac. 1185; 14 Cyc. 458.

If a contract is entered into which has for its purpose a fraud on a third person or on the public, it is subject to the condemnation of the court and not to its commendation. The following are some of the instances in which this court has treated contracts as contrary to such public policy: To prevent competitive bidding at judicial sales where a fraud on a third person is worked (*Schmitt v. Franke,* 160 Wis. 347, 151 N. W. 793); to enable a person to obtain unlawful advantages in voluntary assignment proceedings (*Lowe v. Crocker,* 154 Wis. 497, 143 N. W. 176); if it tends to induce the commission of unlawful acts on the part of the parties to it in procuring evidence or permitting of traffic by the parties with persons guilty of larceny (*Manufacturers & M. I. Bureau v. Everwear H. Co.* 152 Wis. 73, 83, 138 N. W. 624); if it contemplates a series of sales bound in the end

to result in some one being defrauded (*Twentieth Century Co. v. Quilling,* 130 Wis. 318, 110 N. W. 174).

The contract here might well take its place in the public pillory alongside the *Bohemian Oats Cases (Knight v. Linzey,* 80 Mich. 396, 45 N. W. 387; *Schmueckle v. Waters,* 125 Ind. 265, 25 N. E. 281); or the getting of $60 worth of buggies by the disposing of coupons costing the individual at the first end of the chain $3.75, as in *Hubbard v. Freiberger,* 133 Mich. 139, 94 N. W. 727; 9 Cyc. 462; 6 Ruling Case Law, 721. It seems self-evident that the parties to this contract, by agreeing to sell Texas land at $150 per acre that is actually worth $15 an acre, are chargeable as a matter of law with knowledge that it can be disposed of only to a credulous and unsophisticated public by means of fraud, and that no man, except he be taken advantage of by the strong arm or the superior intellect of a sharper, will buy land in the almost limitless bosom of Texas for $150 an acre that is worth no more than $15 per acre.

The case relied upon by the court below and the cases presented by the respondent here present no such situation as would meet the facts in this case. In *Dunn v. Mackey,* 80 Cal. 104, 22 Pac. 64, the agreement was to sell for $12,500 property of the value of $9,000. *Sprague v. Hart,* 11 Cal. App. 782, 106 Pac. 590, was not an action for damages, but an equitable action in which the plaintiff was entitled to security to the amount which he had paid out and no more. In *Ross v. Goldridge M. Co.* 14 Idaho, 687, 95 Pac. 821, defendant bought 25,000 shares of mining stock at two cents per share which he guaranteed to sell at five cents per share, the amount involved being $750, and no question of exorbitancy was raised. And in *Brown v. Massey,* 138 Mo. 519, 38 S. W. 939, the agreement to repurchase was at a profit of ten per cent.

It is true that it appears that no one was induced to buy any of this land at this price. They had a few who nibbled

but none who bit, in spite of the efforts and expense of the plaintiff in this enterprise. But it is never necessary that harm should have actually resulted to some one of the public in order to change a contract *contra bonos mores* to one entitled to the respect of and enforcement by the court. 9 Cyc. 481; *Walsh v. Hibberd,* 122 Md. 168, 89 Atl. 396; *Firemen's C. Asso. v. Berghaus,* 13 La. Ann. 209.

It is quite plain that if any one had been sufficiently enticed to purchase this property at $150 an acre during the year in question upon the representations shown to have been made to the public by the plaintiff or defendants in this action, the parties in this action, or any one of them, might well have been required to disgorge such purchase money in an action brought by such purchaser on the ground of fraud and deceit upon just such evidence as has been produced in this case by the plaintiff himself as to the nature and character of the property. There could have been no contribution from the defendants had the plaintiff been required in such action to repay the full amount of such purchase money, because the three would have been joint tortfeasors. Yet in this action the effect of the judgment is to permit the plaintiff to recover and retain substantially the same amount that he could have been required to disgorge if the contract that he entered into had been executed, according to its language, its intent, and the practical construction given to it by the parties themselves.

I think the complaint should have been dismissed. I am authorized to state that Justice KERWIN agrees with me in this dissent.

MARSHALL, J. (*dissenting*). If plaintiff is entitled to have the transaction disclosed by the record judicially enforced, I have no criticism to make of the rule of damages applied; but it seems that such transaction was a combination to induce persons, by false representations, to buy the Mercedes tract of land at $150 per acre,—though it was

known by the interested parties to be worth but a small frac-
tion of such price,—plaintiff, in consideration of making the
exchange of his property for the Texas land and assisting
in working off the particular tract at the fictitious price, to
realize, in the end, a large profit.  I incline to the view that
the scheme is substantially like such as were dealt with in
*Knight v. Linzey,* 80 Mich. 396, 45 N. W. 387; *Schmueckle
v. Waters,* 125 Ind. 265, 25 N. E. 281; *Walsh v. Hibberd,*
122 Md. 168, 89 Atl. 396, and similar cases and that, on
broad grounds of public policy, it should be condemned as
judicially unenforceable.

I favor a reversal of the judgment and remanding the
cause to the trial court with directions to dismiss the com-
plaint.