GOOD, Receiver, Appellant, vs. STARKER, Respondent.

*October 9—November 6, 1934.*

For the appellant the cause was submitted on the briefs of *James E. Trask* of St. Paul, Minnesota, *N. O. Varnum* of Hudson, and *Oscar Hallam* of St. Paul, Minnesota.

For the respondent there was a brief by *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *Myron H. Stevens*.

FOWLER, J. The suit is to recover from the defendant the superadded liability of stockholders of a North Dakota corporation imposed by the statutes of that state. The defendant Starker owns thirty-four shares of the common stock of the corporation. Under the Wisconsin Blue Sky Law the railroad commission on December 13, 1919, issued an order permitting the sale in Wisconsin of one hundred and fifty shares of the stock of the corporation. The court found that prior to the purchase by the defendant of his stock, the one hundred and fifty shares, the sale of which was authorized by the commission, had been sold. Sec. 1753—57, Stats. 1919, declared that the sale of every security issued by any corporation without a permit from the commission, and that a sale of stock not in conformity with the provisions of the permit for sale, should be void.

The defendant claims that, as all the stock authorized by the permit had been sold prior to the sale of his stock, the sale to him was unauthorized, and the sale and the stock issued thereon were void under the statute stated; that the word "void" in the statute must be given its ordinary and natural meaning, and under such meaning his stock is absolutely void; and that the holder of stock that is absolutely void is not subject to the statutory superadded liability of stockholders.

The plaintiff contends that the word "void" in the statute means voidable at the option of the purchaser; that the defendant by accepting the stock and dividends thereon and attending stockholders' meetings exercised his option to con-

sider the stock valid; and that by so acting and holding himself out to creditors of the corporation as a stockholder and thereby inviting extension of credit to the corporation, the defendant is estopped from claiming he is not a stockholder.

The defendant claims that the statute declared a public policy of the state, and that no estoppel can arise against asserting the invalidity of a contract that is against public policy.

The plaintiff cites many decisions of this court in which the word "void" in statutes has been held to mean voidable. In cases under old section number 2320, Stats. (now sec. 242.07), declaring conveyances in fraud of creditors void, and under old section number 3914 (now sec. 316.41), declaring sales of property of an estate void in which the executor, administrator, or guardian of the estate has an interest, the word "void" has been construed to mean voidable. This is because the purpose of the statute is fully effected by so holding, and such holding is necessary for the protection of innocent purchasers. In view of this an intent of the legislature to use the word "void" in the sense of voidable is read into the statute. Whenever from the nature of the transaction prohibited and the purpose of its enactment such intent may reasonably be read into such a statute, the word "void" will be construed as so meaning. Such cases are *Gibson v. Gibson,* 102 Wis. 501, 78 N. W. 917; *Hyman v. Landry,* 135 Wis. 598, 116 N. W. 236; *Melms v. Pabst Brewing Co.* 93 Wis. 153, 66 N. W. 518.

The purpose of the statute here under consideration was to protect the purchasers of stock from having foisted upon them fraudulent and improvident issues of stock. By giving the purchasers the right to repudiate sales made contrary to the statute, and recover payments made thereon upon timely rescission under circumstances prescribed in other provisions of the Blue Sky Law, the purpose of the statute is fully effected by construing the word "void" as voidable. Stock

sold contrary to the statute may become highly valuable. When it becomes so, the purchaser should be protected in holding it as valid. Innocent purchasers of stock so sold in the first instance should be likewise protected in so holding it. The statute does not proscribe selling stock of corporations as against public policy. It does not prohibit sales of stock. It only surrounds its sale with certain safeguards.

A distinction exists between contracts and sales absolutely prohibited and those prohibited except on performance of specified conditions. Cases cited by respondent are of the former class. Thus in *Austin v. Burgess,* 36 Wis. 186, a usurious contract was involved, and by statute usurious contracts were declared void. *Hale v. Kreisel,* 194 Wis. 271, 215 N. W. 227, involved a contract for a commission of a real-estate broker which was declared by statute void if not in writing as prescribed. In these cases contracts like those involved could not be made valid by first procuring permission from public authorities to make them. Under no conditions could the contracts involved be made valid. The case of *Land, Log & Lumber Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964, is another one in which the word "void" in a statute was construed as meaning absolutely void. The statute involved declared void contracts between members of a county board and the county for the purchase of articles. The ruling went upon the considerations that the statute declared a public policy and its purpose could be effected only by giving to the word "void" its natural and ordinary meaning of absolute nullity. One statement is made in the opinion of this case that we must recall as not applicable to every conceivable situation. It is stated on pages 253, 254, that "where a statute declares a contract void and imposes a penalty for making it, such contract is illegal, it is absolutely void, not voidable merely," citing the texts of Maxwell and Endlich on Interpretation of Statutes as authority. The text of Max-

well, page 380, is: "It may *probably* be said" as stated. The case of *Gye v. Felton,* 4 Taunt. 876, is cited as the only authority for the statement in both texts. The head-note to the case, as given in 128 Eng. Rep. Full Reprint, 577, states:

"If it be doubtful whether a statute declaring an act, instrument, or contract void, makes it voidable only, another clause in the same statute imposing a penalty on such act, instrument, or contract, is a clear test that it is *ipso facto* void."

This may be so where the act or contract is absolutely prohibited as distinguished from prohibited except on performance of conditions precedent. But the rule should not be permitted to override the rule that when the whole purpose of the statute is effected by giving the word the meaning of voidable and public policy is not involved the word should be given that meaning.

This brings us to the point of determining whether the statute involved declares a public policy. As said in the opinion in *Trumpf v. Shoudy,* 166 Wis. 353, 359, 164 N. W. 454, 456, "the term 'public policy' is admittedly one of vague and uncertain meaning." As applied to statutes claimed to declare public policy, the definition given at page 2 of Greenhood on Public Policy, seems proper to apply. It is there said:

"By 'public policy' is intended that principle of the law which holds that *no subject* can lawfully do that which has a tendency to be injurious to the public or against the public good."

This definition has been accepted in a multitude of cases. 6 Words & Phrases (1st Series), 5813; 4 id. (2d Series), 26; 6 id. (3d Series), 382; 3 id. (4th Series), 264. By this we infer is meant that when a statute declares a public policy in respect to a matter, it applies to all citizens of the state alike, and prohibits each and every citizen from acting con-

trary to the declaration of the statute. The statute here involved does not apply to all citizens. It does not prohibit all citizens from selling or all citizens from purchasing corporate stock. It only prohibits sales when certain specified prerequisites to sale have not been complied with. Another definition commonly given is that whatever contravenes good morals or any established interests of society is against public policy. Words & Phrases, 1st, 2d, 3d, and 4th Series, *supra*. The statute under consideration does not declare or imply that sales or purchases of corporate stock are against good morals or contravene the interests of the public. It manifestly is not to the interests of the public that corporate stock of great or substantial value by whomsoever held, shall be null, merely because in the first instance it was sold in absence of compliance with the statute. Doubtless the Blue Sky Law as a whole was intended to promote the general welfare by putting a check on sales of worthless corporate stock, but this is a different matter from prohibiting stock sales by everybody. The statutes in the *Austin* and *Hale Cases* above cited applied to everybody, and that involved in the *Land, Log & Lumber Co. Case* applied to every county officer. The position of the defendant that stock sold contrary to the statute is absolutely null and void, if upheld, might be taken by the corporation as well as by a purchaser. It would enable the corporation, even after stock was wholly paid for, to refuse to recognize the holder of stock originally sold contrary to the statute as a stockholder, to refuse to pay him dividends, and to deny him the right to vote his stock. It would subvert the purpose of the statute, which manifestly was to protect the citizen. A statute should not be construed as declaring a public policy that would operate to defeat the purpose of its enactment, if a construction that will effect its purpose can be given.

It is our conclusion that the word "void" in the 1919 statute must be construed as meaning voidable. This is in accord

with the construction given by the federal court of appeals in *In re Racine Auto Tire Co.* 290 Fed. 939, to the 1917 statute which prohibited and penalized sales made without a permit from the railroad commission. The 1917 statute contained no declaration that such a sale was void, as did the 1919 statute. But the imposing of a penalty for the doing of a prohibited act, is as efficient to nullify contracts made in violation of the prohibition as the mere statutory declaration that such a contract is void. When contracts are both declared void when made in violation of a prohibited act and a penalty is also imposed for the violation, the penalty serves to indicate that the word "void" implies absolute nullity, rather than voidability. This is the import of the head-note above quoted from *Gye v. Felton, supra.* But as we consider that the rule of that case does not apply to statutes not declaratory of public policy, the difference between the 1917 and 1919 statutes is insignificant.

It may be added that the 1923 legislature by ch. 445 amended the 1919 statute by substituting the words "voidable at the election of the purchaser" for the word "void," thus putting the provision in its present form. Sec. 189.15 (1), Stats. 1933. We consider, in view of the effect of the contrary construction upon stock sold contrary to the statute in the hands of innocent holders, that the amendment indicates a legislative understanding of the meaning of the word "void" in the 1919 statute rather than an intent to change the meaning of that statute.

The word "void" in the 1919 statute being construed as meaning voidable at the election of the purchaser, the case is ruled by that of *Allen v. Fulton,* 167 Wis. 352, 167 N. W. 429. In that case a Minnesota corporation had sold its stock in this state without filing its articles of incorporation as required by sec. 1770*b*, Stats. 1898. The receiver of the corporation sued Fulton to collect the stockholders' superadded liability prescribed by the Minnesota statute. Fulton de-

fended on the ground that the sale was void because the cor-, poration had not complied with sec. 1770b. The suit was brought in 1917. Fulton had received the stock sold to him in 1910 and had received dividends thereafter declared upon it. The court held that the sale to Fulton was not void, but voidable at his election, and that he "must therefore be deemed to have elected to affirm the contract of stock subscription: Having so elected, his liability as a stockholder attached and he can claim no immunity therefrom on the ground that the corporation had not complied with the provisions of sec. 1770b at the time he bought his stock. He could have disaffirmed his stock subscription contract if seasonably done and have avoided liability as a stockholder. But he did not do so. He chose to affirm the contract, and the liabilities growing out of such affirmance may be enforced against him by the receiver in behalf of the creditors."

As the above rules the case against the defendant it is not necessary to consider the other points raised and discussed in the briefs.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with instructions to enter judgment for the plaintiff.