ROTOR-AIRE, INC., Plaintiff-Respondent, v. MARTH, Defendant-Appellant and Third-Party Plaintiff: OPGENORTH, and another, Third-Party Defendants.

Supreme Court

*No. 76–122. Argued January 8, 1979.—Decided February 27, 1979.* (Also reported in 275 N.W.2d 701.)

774

For the appellant there were briefs by *Molbreak Law Office,* and oral argument by *Vernon W. Molbreak* of Madison.

There was a joint brief by *Jenswold, Studt, Hanson, Clark & Kaufmann* for third-party defendants; and by *Miller, Rothstein & Mussallem* for respondent, and oral argument by *Larry I. Hanson,* all of Madison.

WILLIAM G. CALLOW, J.   This is an appeal from a judgment awarding damages to the plaintiff for the cost of helicopter flight lessons given to the defendant. We affirm the trial court's finding that the defendant's implied promise to pay for flight instruction was not contingent on the sale of a helicopter to him at dealer's cost; we modify the judgment, however, in light of our conclusion that it is contrary to public policy under these circumstances to permit recovery for lessons given before the instructor received his FAA certification.

In the summer of 1972, William Marth spoke to representatives of the R. J. Enstrom Corporation about the possibility of establishing a helicopter dealership and of using a helicopter to sell real estate. Enstrom representatives invited him to a February 16, 1973, helicopter demonstration in Madison where he met Robert De More, of Enstrom, and Claude Frickelton, who was interested in establishing a Madison dealership for Enstrom. Assuming that Enstrom would award Frickelton the dealership, Marth wrote a letter to Frickelton and De More on February 19, 1973, setting forth the terms of a proposal for a subdealership in the Milwaukee area. The "Frickelton proposal" confirmed the details of a tentative agreement reached during a discussion between the parties and proposed that both Frickelton and Marth, as dealer and subdealer, would each order a helicopter at dealer's cost. Marth was to provide the down payment for one, to be held in an escrow account and released if Marth became

licensed as a commercial helicopter pilot before June 1, 1973. When qualified as a pilot, Marth would provide the balance.

Frickelton did not become the Enstrom dealer. Enstrom awarded the dealership to Edward Morgan and Gerald Opgenorth, who were in the process of forming a corporation to operate the dealership under the name of Rotor-Aire, Inc. De More gave Morgan and Opgenorth Marth's letter setting forth his proposal for a subdealership. Marth testified that on April 6, 1973, Morgan phoned to ask if he wanted to go through with the Frickelton proposal. Morgan and Opgenorth met with Marth in West Bend on April 7, 1973. Testimony as to what happened at the meeting is in conflict. Marth testified that Morgan and Opgenorth asked if Marth would pay the retail price for the helicopter and that he responded with a definite "no." According to Marth, at the close of the meeting, the parties agreed that they would abide by the Frickelton proposal. At trial, Morgan and Opgenorth denied any agreement to follow the Frickelton proposal. They testified that they rejected the proposal and told Marth they did not want him as a subdealer. They testified they told Marth that he would have to pay retail price for a helicopter, but explained that if he later became a salesman, he would get a percentage of the profit on any helicopter he sold. Morgan recalled that, while Marth first insisted he wanted to buy a helicopter at dealer's cost, he finally agreed to buy it at retail price. Morgan characterized the resulting agreement as follows: Marth would buy a helicopter at retail price if he could learn to fly. Subsequent helicopter sales by Marth would result in a percentage of the profit being paid to Marth. Marth would begin flight lessons from Rotor-Aire as soon as possible at a rate of $80 per hour. Opgenorth testified that there would be no subdealership.

Beginning on or about May 5, 1973, Marth traveled back and forth from West Bend to Madison for sixteen

flight lessons from Morgan. Morgan had completed a helicopter instructor's course but had not taken the final "check ride" with a Federal Aviation Administration examiner. On May 10, 1973, Morgan received an FAA instructor's rating. He had given Marth 5.8 hours of flight instruction before May 10. Morgan testified that at the April 7 meeting he told Marth he did not yet have the instructor's rating.

Morgan testified that Marth was having difficulty with his lessons and was not progressing well. The lessons continued throughout the month of May, 1973. Marth gave Morgan a $1,000 check dated May 22 to be applied toward the cost of the lessons. Marth testified that he brought the check after repeatedly asking whether he should make payments and being told that it would be taken care of later. He said that only after he gave Morgan the check was he told that the charge for the lessons was $80 per hour. Morgan testified, on the other hand, that Marth brought the check in response to Morgan's request for part payment for the lessons.

Marth testified that around the time he delivered the check he asked to see the invoice on the Rotor-Aire helicopter, which was similar to the one he was going to buy, in order to prepare to obtain financing. Morgan gave him the invoice which showed the retail price and dealer's discount, and Marth remarked that it was "in the range [he] figured at $42,000." The retail figure shown was $48,922; the 15 percent dealer discount brought the cost to Rotor-Aire to $42,462.45. Morgan neither admitted nor denied with certainty that he showed Marth an invoice for the Rotor-Aire helicopter.

Marth recalled that on May 31, 1973, before a flight lesson, Morgan told him that he and Opgenorth wanted to meet with him later that day. He testified that following the instruction he was told that because of unforeseen financial difficulty, Rotor-Aire would not be able to

sell him the helicopter at dealer's cost. Morgan testified that before the lesson he did not ask Marth to meet but that afterwards they began to figure out the cost of Marth's helicopter and their differences became apparent. Opgenorth stated that Morgan told him after the May 31 lesson he and Marth began to talk about the price of the helicopter; it then appeared that Marth thought he was going to get a discount. Opgenorth told Marth he remembered that the April 7 agreement called for the retail price. Marth left, stopped payment on his check, and cancelled his lessons. Morgan had given Marth 23.3 hours of flight instruction. On June 24, 1973, Opgenorth went to West Bend and offered to sell Marth a helicopter at dealer's cost. Marth refused the offer.

Rotor-Aire sued Marth in contract for the cost of the lessons. Marth's answer asserted, among other things, that the agreement was as outlined in the Frickelton proposal and that Rotor-Aire breached the agreement by telling Marth it would not sell him a helicopter at cost, thus relieving Marth of any obligation to Rotor-Aire. Marth counterclaimed against Rotor-Aire and began a third-party action against Morgan and Opgenorth seeking damages based on their alleged fraud, deceit, and misrepresentation. The trial court overruled Morgan and Opgenorth's demurrer to the third-party complaint. Issue was joined, and the case tried to the court on March 15, 1976. The trial court found that there was an implied contract to pay the reasonable value of the flight instruction, which it determined to be $80 per hour, and that payment for the lessons was not contingent on Rotor-Aire's selling Marth a helicopter at dealer cost. The court determined that Morgan and Opgenorth did not falsely or fraudulently induce Marth to take the lessons. It rendered judgment for the plaintiff in the amount of $1,929.24, dismissing the defendant's counterclaim and third-party complaint. The defendant appeals from the judgment.

There are two questions presented: (1) Is the trial court's finding that Marth's implied promise to pay for the flight instruction was not contingent on Rotor-Aire's selling Marth a helicopter at dealer's cost against the great weight and clear preponderance of the evidence? (2) Should the damages award be reduced to discount the instruction time during which Morgan did not have an FAA instructor's rating?

The trial court's findings at issue on this appeal are:

"4. That there was an implied promise by the defendant William J. Marth to pay the reasonable value of said services.

". . . .

"7. That payment for the flight instruction by the defendant was not contingent upon Rotor-Aire, Inc., selling the defendant a helicopter at dealer's cost or granting the defendant a subdealership.

"8. That there was no contract between Rotor-Aire, Inc., and William J. Marth either oral or written, expressed or implied[,] other than as indicated in paragraph 4 above."

The trial court's findings of fact will not be upset on review unless against the great weight and clear preponderance of the evidence. *Gerner v. Vasby,* 75 Wis.2d 660, 662, 250 N.W.2d 319 (1977). Where more than one inference can be drawn from the credible evidence, the reviewing court must accept the inferences drawn by the trier of fact. *Gehr v. Sheboygan,* 81 Wis.2d 117, 122, 260 N.W.2d 30 (1977). Marth admits he agreed to pay the reasonable value of the services, but argues that the evidence shows that this promise rested on Morgan and Opgenorth's promise to deliver a helicopter at dealer's cost.

The trial court's findings here have ample evidentiary support. The testimony is conflicting, but viewing it as

we must in the light most favorable to the trial court's findings, *Gerner v. Vasby, supra,* it cannot be said that the findings are against the great weight and clear preponderance of the evidence. Morgan and Opgenorth both testified that they rejected the Frickelton proposal and refused to provide a helicopter to Marth at dealer's cost. They recalled Marth's acceptance of the plan to sell him the first helicopter at retail and then, should he sell additional helicopters, to pay him a portion of the profit. Nothing in the parties' conduct is inconsistent with their account. Marth points to Morgan's showing him, on request, the Enstrom invoice for the Rotor-Aire helicopter. This does not conclusively establish that the parties expected Marth to pay dealer's cost for his first helicopter. The record amply supports the trial court's finding that Marth's promise to pay for flight instruction was not premised upon his purchase of a helicopter at dealer's cost.

Having found Marth's promise to pay was not conditional upon the terms of the proposed helicopter sale, we need not consider the defendant's argument that any agreement to deliver a helicopter to Marth at dealer's cost would be unenforceable under the statute of frauds, sec. 402.201, Stats.

Marth argues that if the trial court's findings as to the oral agreement are sustained, this court ought to reduce the damages award because, for the first 5.8 of the 23.3 charged hours of instruction, Morgan did not have an FAA instructor's rating. Rotor-Aire responds that Marth, a lawyer with some prior aviation experience, was aware that Morgan did not have his instructor's rating but nonetheless proceeded with the lessons. At trial Morgan testified that he believed he could charge Marth for the first 5.8 hours despite the fact that he was not yet a certified instructor. The trial court did not make any finding concerning a distinction between the value of in-

struction before and after licensing; it found simply "[t]hat the reasonable value of flight instruction was at the rate of $80 per hour, 23$\frac{3}{10}$ hours provided." We take judicial notice pursuant to sec. (Rule) 902.03(2), Stats., of the following regulations contained in Title 14 of the Code of Federal Regulations. Section 61.41 limits credit for flight instruction by noncertified instructors to those in the Armed Forces of the United States or a foreign contracting state. Section 61.3(d)(1) provides that no person other than the holder of a flight instructor certificate issued by the FAA administrator may give any of the flight instruction required to qualify for a solo flight or for the issuance of a pilot certificate or rating. Section 61.113(a) provides that an applicant for a private pilot certificate with a rotorcraft (helicopter) rating must have at least forty hours of flight instruction.

Marth contends that Morgan may not recover damages for the first 5.8 hours of lessons because the instruction was aimed at securing a pilot certification for Marth and because Morgan was unauthorized and presumably unqualified to give the instruction. So considered, the implied contract to pay for the first 5.8 hours is not enforceable as contrary to public policy.

The record clearly demonstrates that the object of the implied contract to pay for services was to enable Marth to secure a pilot's certificate in order to fly his own helicopter. By virtue of the several sections mentioned, the first 5.8 hours of instruction did not count toward the certificate. Thus there is no support for the trial court's valuation of the first 5.8 hours at $80 per hour. The plaintiff failed to offer any proof of an alternative value of the flight time if it could not be credited toward the required instruction time.

We conclude it is contrary to public policy to permit the recovery of compensation for pilot instruction given by

those who are not authorized to instruct because this is clearly a public safety requirement. *Compare: Continental Insurance Co. v. Daily Express, Inc.,* 68 Wis.2d 581, 229 N.W.2d 617 (1975) ; *Trumpf v. Shoudy,* 166 Wis. 353, 164 N.W. 454 (1917). We further conclude that in the absence of proof of any other value of the flight time there is no other basis upon which the value of the 5.8 hours can be computed. For these reasons the plaintiff is not entitled to compensation for the 5.8 hours of flight time which preceded Morgan's certification as a licensed rotorcraft instructor. The plaintiff is entitled to recover for the instruction time given to Marth on the implied contract following his rotorcraft pilot certification on May 10, 1973, at the rate of $80 per hour in the sum of $1,449.

Rotor-Aire has moved for interest on the judgment and double costs on the ground that this appeal was in bad faith and for delay only. In light of the merit to Marth's final argument, the motion must be denied.

*By the Court.*—Judgment modified and, as modified, affirmed. No costs taxed.