# CHARLESTON.

RAILWAY COMPANY *v.* MARPLE *et al.*

Submitted March 29, 1910.    Decided December 12, 1911.

TAXATION—*Sale for Taxes—Combination Between Bidders.*

An agreement between two or more persons, not general partners, who are competitive bidders at delinquent tax sales, that they will become partners in all lands that may thereafter be purchased by either of them, contravenes public policy, and will render void a tax deed acquired pursuant to such agreement.

Appeal from Circuit Court, Braxton County.

Action by the Coal & Coke Railway Company against John Marple and others. Decree for plaintiff, and defendants Marple and John I. Bender appeal.

*Affirmed.*

*Morrison & Rider,* for appellants.

*Haymond & Fox,* for appellee.

WILLIAMS, PRESIDENT:

. Plaintiff brought its suit in equity against John M. Marple and John I Bender and others to cancel a tax deed for 66½ acres of land, made by the clerk of the county court of Braxton county to said Marple and Bender, and obtained a decree in its favor, on the 12th day of December, 1907. From that decree Marple and Bender have appealed.

The land was owned by M. A. Stump, and on the 28th of December, 1900, he and his wife conveyed it to Henry G. Davis. In September, 1901 said Davis and wife conveyed it to the Washington Coal & Coke Company, and it, in turn, conveyed it to plaintiff in February, 1904. The deed from Stump and wife to Henry G. Davis was not recorded until April 15, 1901, and, hence, too late to be transferred on the land book and charged with taxes in the name of said grantee. It was, therefore, properly returned delinquent in the name of said Stump for non-payment of taxes for the year 1901.

The learned circuit judge who heard the cause prepared a very elaborate and able written opinion which, on motion of plaintiff, was made a part of the record. That opinion has been of much service to us in our effort to reach a just conclusion. Many facts were averred in the bill as constituting sufficient grounds for avoiding the tax deed. But it is necessary for us to consider only one of them, because all the others relate to matters which this Court has heretofore held, in similar cases, to be either unimportant, or to be such defects in the proceedings as are expressly cured by statute.

The ground on which the court set aside the tax deed is, that an agreement had been entered into between said Marple and Bender in 1902 or 1903, to become partners in all lands that might thereafter be sold for taxes, and purchased by either of them at tax sales. This, we think, was sufficient ground to avoid the deed. Marple and Bender filed their joint answer, in which they aver "that said tract of land was purchased at said tax sale by them at a risk; that they, nor neither of them knew whether or not there was any land there; that said land was simply purchased by them because it was cheap; that they did not know of said tract of land when they attended said tax sale, nor did they know said tract of land belonged to plaintiff."

They deny, however, that there was any arrangement or agreement between them before said sale, or at the sale, or at any other time, "as to this tract of land." Defendants do not deny that there was a partnership agreement, previously made, which related to and embraced all lands that either of them might thereafter purchase at a tax sale. Their qualified denial is a virtual admission that such partnership existed, which embraced any and all lands that either of them might thereafter purchase. Moreover, Marple testified as follows: "In 1902 and 1903, we made arrangements, Bender and I were both buying land at Sheriff's Tax sales, and I suggested to him that we go in partners, and we agree to do so." The land in question was sold in January, 1904, after the partnership arrangement was made, and the whole tract was purchased by Marple at the price of $5.54. The testimony, above quoted, proves that the agreement to become partners was made to prevent competitive bidding, at tax sales, between Marple and Bender. They had been competing bidders, and, in order to prevent competition between themselves, they agreed to become partners. The partnership embraced a matter concerning which the two parties had theretofore been competitors, nothing else. The real purpose was to prevent competition. Such a partnership would not be created between non-competitors, and when entered into by competing bidders, it is equivalent, in law, to an agreement not to compete with each other, which is against public policy.

The collection of taxes by the sale of land, simply upon notice posted and published in a newspaper, without judicial process, is purely a statutory proceeding, and is a very drastic remedy. The constitutionality of such proceeding was, for a long time, seriously doubted by many men learned in the law, and while the question may now be regarded as fairly well settled in favor of the state's rights to collect its revenue by that method, still it has always been the uniform policy of the law to protect the right of the delinquent land owners with every reasonable safeguard, consistent with the right of the state to collect its revenues without unreasonable delay. One of these safeguards is, the stautory provision that no more of the delinquent owner's land shall be sold for the taxes due thereon than is necessary. Another is, that the sale, shall be at public

auction at a certain place, and on certain days, and after due publication in the manner particularly set out in the statute. Still another safeguard is the one embedded in the general policy of the law, which is that the bidding shall not be stifled, or competition discouraged. It cannot be said that a delinquent taxpayer deserves no consideration at the hands of the state because he has failed to perform one of the most important duties which she has enjoined upon him. The statute is not penal, but remedial. The state seeks only to get her revenue by this means, not to punish the delinquent taxpayer. The right of property is involved which, in the eyes of the law, has been a sacred right from time immemorial. The right of the state to its revenue, only, is superior to that of the owner. The remedy was not designed for the benefit of land speculators. The rights of the delinquent land owner stand next to those of the state. He has a right to demand that competition at the sale shall be unfettered by any arrangement, or agreement, between prospective bidders, which has for its object the acquisition of the greatest amount of his land for the taxes due on it. Such an agreement between competitive bidders, or prospective bidders, is a fraud upon the law. The agreement between Marple and Bender, who were not general partners, to become partners in all lands thereafter sold for tax, and purchased by either of them, is purely a speculative contract. It is, in effect, an agreement not to bid against each other, and is, therefore, against public policy. That the agreement does not relate to any particular piece, or tract, of land, but comprehends all lands that may be thereafter sold for taxes, regardless of quantity, locality or ownership, renders the agreement all the more objectionable, as showing more clearly the purpose to stifle competition. If such an arrangement between two competitive bidders could be considered lawful, then it would follow that the same arrangement between any number of persons would likewise be lawful, because there is no limit upon the number of persons that may form a partnership, and that would lead to the destruction of competition altogether. But such an agreement is against public policy and is ground for avoiding the tax sale and deed. The authorities are not harmonious on the question here discussed, but we think the weight of

reason, if not the greater number of adjudicated cases, supports our conclusion.

The land in the present case is worth over $6,000.00, and was purchased for $5.54, the amount of tax due on it. If Marple and Bender had competed for the purchase of it, it is more than likely that not more than one acre of it would have been sold for the tax. Is it not more consonant with justice, and far the better policy, to hold such speculative contracts which tend to destroy competition, unlawful, than it would be to uphold them? We think so. The purchasers lose nothing but their bargain, they get their money back with large interest, but if the contract should be held lawful, plaintiff would lose its land. A purchaser who buys at a tax sale, knowing the land to exist, takes no risk. He has all to gain and nothing to lose. Justice, in the present case, is clearly on the side of the land owner.

The following authorities will be found to support this opinion, viz: *Dudley* v. *Little,* 2 Ohio 504; 15 Am. Dec. 576; *Slater* v. *Maxwell,* 6 Wal. 268; *Kerwer* v. *Allen,* 31 Iowa 578; *Easton* v. *Mawkinney,* 37 Iowa 601; 1 Blackwell on Tax Titles, sec. 559; 2 Cooley on Taxation, (3rd ed.) page 943.

We affirm the decree of the lower court.

*Affirmed.*


BRANNON, JUDGE, *(dissenting):*

I cannot see that an agreement between two persons to buy jointly at a tax sale is unlawful, there being no combination to prevent competition. It is a sale under state authority, two may purchase at a judicial sale. *Henderson* v. *Henrie,* 61 W. Va. 283. What difference? "No combination to prevent competition at a tax sale is to be implied from the mere fact of a joint purchase by two persons of tracts of land struck off at such sale." *Kerr* v. *Kipp,* 37 Minn. 25. "It being lawful to buy at tax sales, a partnership to acquire lands at such sales is legal." *Dawson* v. *Ward,* 71 Texas 72. "Two persons or more may unite in bidding off property, if their purpose is not to prevent competition among bidders, but for their mutual convenience, as with the view of enabling them to become joint owners, or in case each desires to purchase a part only of certain

property offered entire, or for any other reasonable or proper purpose." Blackwell on Tax Titles, 559. Black on Tax Titles, §246, says it is clear that two or more persons may agree to bid jointly, if they do so to protect their own interest and not to prevent competition. I cite also 27 Am. & Eng. Ency. Law 840, and 37 Cyc. 1360, and Cooley on Taxation, 994. The cases cited by Judge WILLIAMS will not sustain him. They are cases of rings or agreements not to bid against each other, or where the purchaser had declared the owner would redeem, and the like. Even in the Ohio case, *Dudley* v. *Little,* 15 Am. Dec. 575, there was combination. The opinion says it was not meant to hold that partners cannot purchase at a tax sale for convenience of business. Judge POFFENBARGER, in *Lohr* v. *George,* 65 W. Va. 241, refers to this subject. There he suggests that the agreement must relate to the particular land. That is not the case in this instance. He cites authority for the proposition. Who is hurt by the agreement in this case?

Judge POFFENBARGER also dissents, and concurs in this note.