# CHARLESTON

SHRADER *et al.* v. MEDLEY *et al.*

Submitted May 26, 1914.    Decided June 9. 1914.

TAXATION—*Cancellation of Tax Deed—Grounds.* ·

> An agreement between two or more persons. not general partners. who contemplate bidding on lands at a sheriff's delinquent tax sale. not to bid against one another, or that one of them shall bid in certain tracts in the interest of all, is unlawful, and good cause for setting aside a tax deed acquired in pursuance thereof.

(POFFENBARGER, JUDGE, dissenting.)

Appeal from Circuit Court, Kanawha County.

Bill by S. W. Shrader and others against G. M. Medley and others to cancel a tax deed. From decree for defendants, plaintiffs appeal.

*Reversed and Remanded.*

*Couch & Briggs,* for apellants.

*Kimbrough & Chappelle,* for appellees.

WILLIAMS, JUDGE:

S. W. Shrader and the Southern Coal & Coke Company

have appealed from a decree of the circuit court of Kanawha county dismissing their bill, brought to cancel a tax deed made on the 7th January, 1909, by L. C. Massey, clerk of the county court of said county, to C. E. Kimbrough, G. M. Medley and C. E. Summers for a tract of thirty acres of land on Blue Creek, sold in December, 1907, for delinquent taxes assessed in the name of J. W. Walker.

A number of alleged defects in the tax sale proceedings are relied on in brief of counsel as affording sufficient grounds for granting plaintiffs the relief prayed for. But most, if not all, of them come within the curative provisions of Sec. 25, Ch. 31, serial section 1084, Code 1913, and we deem it unnecessary to discuss them.

But it appears from the testimony of witnesses that an unlawful agreement was made between the parties interested in the tax purchase, which had the effect to stifle competition at the bidding, and this is good ground for avoiding the deed. Plaintiff's offer to repay defendants any money expended by them in payment of taxes on the land, cost of survey and deed, together with interest thereon. The land was purchased at the sheriff's sale by C. E. Kimbrough for himself and F. J. Hill, and Hill later assigned his interest in the purchase to Medley and Summers, who were jointly interested with Kimbrough in the purchase of a number of other tracts sold at the same time. Hill testifies that, in the early part of the sale, he and Kimbrough were bidding against each other and the result was that the purchaser got only a part of the tract; that Kimbrough was buying for himself, Medley and Summers, and he and Kimbrough then agreed not to bid against each other, but that they both did bid on the tract in question at the same time, and the sheriff marked the sale up to both of them. The substance of Kimbrough's testimony is, that he talked with Hill a week or more before the sale and Hill told him that he wanted to buy some land, but did not know whether he would be at the sale or not, and told witness that if he saw any good pieces, and wanted to bid them in, to do so and he would bear half the expenses; that on the day of the sale, not knowing that Hill was present, he did bid in thirty acres for himself and Hill; that Hill later told him he did not care for an interest in it and said he

would assign it to witness or to anyone he would designate. He denies that Hill bid on the tract. On cross-examination he says: "I showed him (F. J. Hill) a list of some of the property I· thought would be good, that I had already looked up, and among the number and pieces I showed him, this particular thirty acres seemed to have appealed to his fancy, and the understanding was that I bid it in, that was probably a week before the sale, and I did bid it in."

It matters not whether Hill's or Kimbrough's version of the agreement be taken as the correct one. Each proves an agreement to purchase the tract jointly to prevent competition. By that arrangement they might be able to get the whole tract for the taxes. The effect of such agreements are to stifle competition in the bidding at tax sales. They are against the policy of the law, which is to get the State's revenues without unreasonable delay and without selling any more of the delinquent tax-payer's land than is necessary. This case falls clearly within the principle decided in *Railway Co.* v. *Marple et al.,* 70 W. Va., 136, and is controlled by that decision.

We reverse the decree and remand the cause with directtions to the chancellor to enter a decree cancelling the tax deed, on repayment to defendants of the amount of money expended by them in payment of taxes on the land, sheriff's commissions, costs of survey and deed, and interest thereon.

*Reversed and Remanded.*