SCHMITT, Appellant, vs. FRANKE and others, Respondents.

*March 5—March 23, 1915.*

*Contracts: Validity: Public policy: Preventing competitive bidding at judicial sale: Equity: Specific performance.*

1. Contracts to prevent competitive bidding at judicial sales whereby a fraud on any third person is worked are invalid as against public policy.
2. In an action to enforce specific performance of an oral agreement to transfer an interest in certain corporate stock to plaintiff, it appearing that as an essential part of such agreement plaintiff was to refrain from bidding at a judicial sale of the stock and allow one of the defendants to bid it in without competition and thus to cut off the interest of a third person who was not financially able to bid, plaintiff was barred of relief in equity.
3. A cause of action does not arise out of a contract which violates public morals or public policy.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

This is an action in equity to enforce specific performance of an alleged oral agreement to transfer to plaintiff an undivided one-third interest in 701 shares of corporate stock of the Schmitt Brothers Tobacco Works and to impress a trust in the plaintiff's favor upon 501 shares thereof now in the hands of the defendants. The relief was denied on the ground that a part of the oral contract for the transfer of the stock was

an arrangement to restrict public bidding at a judicial sale of said stock, and that the plaintiff was barred of relief in equity by having become a party to said last named arrangement.

The facts found by the court were in substance as follows: Prior to June, 1907, the plaintiff and his brothers, *C. M. Schmitt* (one of the respondents here) and Mathias F. Schmitt, were minority stockholders in the Hansen-Schmitt Company, a tobacco manufacturing corporation at Milwaukee, the said *C. M.* and Mathias being actively engaged in the business. On account of business differences *C. M.* and Mathias were forced out of active participation in the business and they, with the defendant *C. W. Walter*, organized a new corporation for the manufacture of tobacco, called the Schmitt Brothers Tobacco Works, which became a competitor of the Hansen-Schmitt Company. Both companies were financially embarrassed in June, 1907, and the defendants *C. M. Schmitt* and *Walter* and said Mathias Schmitt, desiring to make some arrangement which would end the ruinous competition, either by disposing of the Schmitt Brothers' business or acquiring control of the Hansen-Schmitt business, consulted the plaintiff, as a result of which consultation plaintiff went to New York to effect a sale of the Schmitt Brothers' business to the American Tobacco Company, if possible. He did not succeed, but subsequently, pursuant to his advice, an option on 701 shares of the Hansen-Schmitt stock (being a controlling interest) was obtained running to plaintiff and Mathias, which they transferred to the defendant *Franke*, and at the same time arrangements were made for the purchase of the business and assets of the Hansen-Schmitt Company by the Schmitt Brothers Company which were afterwards carried out. About June 25, 1907, *Franke* made a written agreement with plaintiff and Mathias (which was known and consented to by *C. M. Schmitt* and *Walter*) by which he agreed to sell and convey to them said 701 shares of stock (which had then become stock of the Schmitt Brothers Company) for

$30,300, payable in certain instalments, for which the plaintiff, Mathias Schmitt, *C. M. Schmitt,* and *Walter* gave their notes, it being further agreed that all dividends declared on the stock should be immediately applied on the purchase price of the stock and that *Franke* should be employed to purchase tobacco for the company in any market in which he might have a representative. The first note becoming due and not being paid, *Franke,* by virtue of a provision in the contract, declared the whole sum due and brought action to foreclose and bar *Conrad,* Mathias, and *C. M. Schmitt,* and *Walter* from all rights in the stock, which action went to judgment, under which the stock was sold and bid in by *Franke* himself, February 10, 1910, for $31,552.65, which was the exact amount of the debt. After the commencement of the foreclosure action but before the sale *C. M. Schmitt* and *Walter* represented to the plaintiff that if he would permit *Franke* to bid in the stock on the sale without opposition bidding he (*Franke*) would purchase the same for the benefit of the plaintiff, *C. M. Schmitt,* and *Walter* (less a certain number of shares to be retained by *Franke*) under an agreement that the shares should be paid for out of dividends on the stock similar to the former agreement. They further represented to the plaintiff that one of the real objects of the foreclosure action was to cut off Mathias Schmitt's interest in the stock on account of differences which had arisen between him and them. At and before this time plaintiff had been negotiating to raise money to buy the stock at the sale with prospects of success, but on being informed of the arrangement last aforesaid and relying thereon he ceased to make any further efforts, allowed the defendant *Franke* to bid in the stock, and ratified by his conduct and his silence the scheme to cut off by the sale the interest of Mathias. *Franke* knew of the understanding between plaintiff, *C. M. Schmitt,* and *Walter* and the reason why the plaintiff allowed him to bid in the stock without opposition. Before the sale of stock took place, however, *Franke,*

*C. M. Schmitt*, and *Walter* had secretly agreed that *Franke* should convey 501 shares of the stock to *C. M. Schmitt* and *Walter*, the same to be paid for out of the dividends of the business, which agreement was reduced to writing in October, 1910, after a part of the purchase price had been paid, and the plaintiff first learned thereof in March, 1911, when he demanded an interest in the same but was denied any interest by *C. M. Schmitt* and *Walter*. From the beginning of the plaintiff's active connection with the affairs of Schmitt Brothers it was understood by the plaintiff, *C. M. Schmitt* and Mathias Schmitt, and by *Walter* that the plaintiff was to receive some interest in the 701 shares of stock, but the amount was not fixed until the agreement of June 25, 1907, which was understood by all to assure to the plaintiff a one-quarter interest therein. *Franke* knew that plaintiff had some financial interest in the stock and that plaintiff did not sign the notes of June 25, 1907, simply because he had a brotherly feeling for Mathias and *C. M. Schmitt*. The plaintiff performed most valuable services for the Schmitt Brothers Company when it was on the verge of bankruptcy and materially aided in bringing about the results obtained, he and *Franke* being the only parties having a financial standing, and his services were worth $1,000. Upon these facts the court concluded that the plaintiff was barred by his conduct from claiming any share in the stock, but that the ends of justice required that he should recover from *C. M. Schmitt* and *Carl Walter* $1,000 for his services, and the complaint was ordered amended accordingly, and judgment rendered for that sum with interest, but without costs. It was further adjudged that as to *Franke* the complaint be dismissed without costs. Plaintiff appeals from those parts of the judgment denying relief in equity against *C. M. Schmitt* and *Walter* and dismissing the complaint as to *Franke*.

For the appellant there was a brief by *McCabe & Dahlman*, and oral argument by *Maurice A. McCabe*.

For the respondents there was a brief by *Lawrence A. Ol-well,* attorney, and *Thomas A. Barker,* of counsel for respondent *Franke,* and oral argument by *Mr. Olwell.*

WINSLOW, C. J.    There was sufficient evidence to sustain the findings of fact made by the trial court, and the only question which we find it necessary to consider is the question whether the proper legal conclusion was drawn therefrom.

The essential facts are these: *Franke* agreed to sell the 701 shares of stock to plaintiff and Mathias, joint notes being given therefor by plaintiff, Mathias and *C. M. Schmitt,* and *Walter.*    The notes not being paid *Franke* foreclosed the agreement.    Before the foreclosure action was begun *C. M. Schmitt, Walter,* and *Franke* agreed between themselves that *Franke* should bid in the stock without opposition and thereafter give a new contract to the other two men, thus barring out both the plaintiff and Mathias Schmitt.    Before the foreclosure sale *C. M. Schmitt* and *Walter* told plaintiff that the arrangement was that *Franke* should bid in the stock for the benefit of themselves and the plaintiff jointly, thus depriving Mathias (who was not financially able to bid) of his interest, and plaintiff tacitly consented to the plan and on the faith thereof ceased to prosecute the efforts he had begun to get funds with which to bid.    The sale took place; the scheme was carried out, *Franke* obtained the stock on his own bid without competition, Mathias was barred out, and then plaintiff discovered that by secret agreement between *Franke, C. M. Schmitt,* and *Walter* he too was barred of the interest which he had been assured would be preserved to him notwithstanding the foreclosure sale.

On these facts it must be held that the judgment was correct.    Contracts to prevent competitive bidding at judicial sales whereby a fraud on any third person is worked are invalid because against public policy.    The plaintiff here must base his right upon an arrangement to which he consented

which involved as an essential part his refraining from bidding at the sale in order to force Mathias Schmitt out of the business. While there are doubtless cases where agreements between bidders are valid because no third person is injured thereby, this is not one of them. Mathias was entitled to a fair sale of the stock, and as he was not financially able to make a bid himself it is very apparent that the stifling of competition was a fraud upon him. 1 Page, Contracts, § 405; *Herndon v. Gibson* (38 S. C. 357, 17 S. E. 145) 20 L. R. A. 545 and cases cited in note.

A cause of action does not arise out of a contract which violates public morals or public policy. *Milwaukee M. & B. Asso. v. Niezcrowski,* 95 Wis. 129, 70 N. W. 166. This principle is well established and demonstrates the correctness of the judgment.

*By the Court.*—Judgment affirmed.