# CHARLESTON.

McDannald v. Wilmoth et al.
and
Shingleton v. Wilmoth.

Submitted October 8, 1918.   Decided October 15, 1918.

1. Sunday—*Tax Sale—Notice—Publication on Sunday.*

   Notice of a sheriff''s sale of land for delinquent taxes is not void because it is published in a newspaper on Sundays rather than some other day of the week. (p. 720).

2. Taxation—*Tax Sale—Unlawful Agreement to Bid—Effect.*

   An agreement between two persons, not general partners, who contemplate bidding on lands at a sheriff's delinquent tax sale, that one of them shall bid in certain tracts in the interest of both, is unlawful, and good cause for setting aside a tax deed acquired in pursuance thereof. (p. 721).

3. Appeal and Error—*Finding of Fact—Review.*

   A finding of fact by the judge of a circuit court, depending on conflicting testimony of witnesses, will not be disturbed by this court, unless it is clearly against the preponderance of the evidence. (p. 722).

(Poffenbarger and Ritz, Judges, concurring).

Appeal from Circuit Court, Harrison County.

Suits in equity by E. B. McDannald against C. Ervin Wilmoth and others and by Layman C. Shingleton against C. Ervin Wilmoth. Decrees in each case for plaintiff, and C. Ervin Wilmoth appeals.

*Affirmed.*

*J. O. T. Tidler* and *Homer Strosnider,* for appellant.

*Taney Harrison* and *Felix O. Sutton,* for appellee McDannald.

*C. C. Scott* and *R. S. Douglass,* for appellee Shingleton.

WILLIAMS, JUDGE:

These two suits in equity were brought in the circuit court of Harrison county to cancel tax deeds which had been made to the defendant C. Ervin Wilmoth on the 5th of March and the 10th of February, 1914, respectively, as clouds upon the titles of the respective plaintiffs. The facts and circumstances by which the rights of the parties to the respective suits must be determined are the same in each case. The lands involved were sold at the same time and for the same year's delinquency of taxes. The irregularities, if any, in the tax sale proceedings affect the title in either case in the same manner, and hence both cases will be considered and disposed of in this opinion.

In the McDannald case the land consisted of two lots, described in the assessment list as Lot No. 1 and Lot No. 2 Broad Oaks. They had been granted to said McDannald by C. A. Osborn by deed dated February 9th, 1910, and recorded March 2nd, 1910. They were assessed with the taxes for that year in the name of said Osborn, and, the taxes not being paid, the lots were returned delinquent and sold in the name of said Osborn, on the 9th of December, 1912, and purchased by the defendant C. Ervin Wilmoth, who received a deed therefor from the clerk of the county court on the 10th of February, 1914.

In the Shingleton case the land had been granted to said Shingleton by Caroline Deitz Shroat and husband by deed dated June 29, 1910. The land in that case was likewise assessed to the grantor for the year 1910, and described as Lot No. 48 in Broaddus Addition to the City of Clarksburg. It was returned delinquent in the name of Caroline Shroat for non-payment of the taxes for the year 1910, was sold at the same time as the other lots and was likewise purchased by C. Ervin Wilmoth, and not having been redeemed within a year from the date of sale, a deed was executed by the clerk of the county court of said county to the purchaser on the 5th day of March, 1914.

The bill in each case charges a number of alleged irregularities in the tax sale proceedings, which plaintiffs insist render the tax deeds void. One of them is that the notice of the sheriff's sale was published only in the Sunday issue of a newspaper, and it is contended that, as Section 15, Chap-

ter 41, Code, forbids the execution of civil processes on Sunday, except in cases otherwise specially provided by law, the publication, being in the nature of a process, is unlawful and void.   But the following statute validates the publication, if it were not otherwise good.   Acts 1881, Chapter 64, Sec. 1, Chapter 124A, Barnes' Code 1918, provides as follows: "Any publication authorized or required by any law of this State, or by the provisions of any deed of trust, to be made not more than once a week in any newspaper, may be published in a newspaper issued on any day of the week." This statute was designed to authorize publication on Sunday, of any notice required by law to be published in a newspaper. We can conceive of no other purpose in the legislative mind in enacting the statute, because, as the law was before the enactment of the statute, there was no doubt of the right to make publication on any other day of the week except Sunday.

The only other objection urged against the validity of the tax deed, which we need consider in this opinion, is the one on which the lower court set aside the tax deed, that is, that the defendant C. E. Wilmoth and his brother Stuart L. Wilmoth, both desiring to purchase at said tax sale, agreed and combined between themselves not to bid against each other, but that the purchases should be made by the said C. E. Wilmoth for their joint benefit, that the two should share equally therein.   If this charge is proven it furnishes grounds for avoiding the tax deeds.   We held in *Shrader* v. *Medley*, 74 W. Va. 450, following the case of *Railway Company* v. *Marple*, 70 W. Va. 136, that: "An agreement between two or more persons, not general partners, who contemplate bidding on lands at a sheriff's delinquent tax sale, not to bid against one another, or that one of them shall bid in certain tracts in the interest of all, is unlawful, and good cause for setting aside a tax deed acquired in pursuance thereof."   A tax purchaser stands only upon his technical, legal rights, he is entitled to no equitable consideration, as the former owner may be.   True, the former owner, by his negligence in failing to perform his duty to the state in paying his taxes, may lose his land.   But a proper regard for his rights requires

that he shall have the benefit of a fair and open market, free from any combinations or restraints upon the bidders. The only purpose of the statute in providing for the sale of delinquent lands is to enable the state to get its revenues without unreasonable delay, which is a very important matter of course. But, as we said in *Railway Company* v. *Marple, supra,* the rights of the delinquent landowner are next in importance to those of the state, and the policy of the law is to protect him as much as possible by requiring that the bidding among prospective buyers shall be unfettered in any manner. If any number of persons, who contemplate buying at the tax sale, agree among themselves that one alone shall bid, and if he is the successful bidder that his purchase shall be for the benefit of himself and another or others, such agreement necessarily stifles competition to some extent, and enables those entering into the arrangement to purchase the land for a less sum than they could have purchased it if such agreement had not been made. Such an agreement, even between two persons, not general partners, is an unlawful combination in restraint of bidding and is a fraud upon the former owner. "Partnership to purchase at tax sales is against the policy of the law; is a fraud on the owner; and the purchaser can not obtain an available title." *Dudley* v. *Little,* 2 Ohio 504, 15 Am. Dec. 575. 1 Blackwell on Tax Titles, Sec. 559.

This averment of the bill, however, is denied by the answer of C. E. Wilmoth, and also by the testimony of himself and his brother S. L. Wilmoth. They were brothers and lived within a few hundred yards of each other and saw each other almost every day, and admit they both attended the tax sale. But they both swear that no agreement or understanding was had between them until after the land had been knocked down to C. E. Wilmoth. On the other hand, three or four witnesses for plaintiffs swear that the Wilmoths stated to them, in conversations with them had after the sale, and when plaintiffs were trying to effect a compromise and get their land back, that the partnership arrangement was made before the sale, that C. E. Wilmoth purchased for their joint benefit. The circuit court held

this testimony sufficient to overcome that of the two Wilmoths and to prove the fact of the making of the agreement prior to the sale, and his finding in this regard is certainly not against the preponderance of the evidence. The decrees in the two cases will, therefore, be affirmed.

Poffenbarger, President, concurring:

The two decisions by this Court, referred to in Judge Williams' opinion, regarded as precedents, sustain this decision. I dissented in both of them, but they now apply the rule *stare decisis.* However, I do not wish to be regarded as yielding my assent to it as a general proposition applicable in all cases of joint purchases at tax sales. Nobody is bound to bid at a tax sale, nor is the form of his bid controlling, when he does bid. If he does not in fact intend to stifle bidding, nor actually effect a suppression thereof, he may bid jointly with another. There may be instances in which two or more men cannot bid otherwise than by a combination of their cash resources. And there may be other circumstances clearly showing lack of wrongful intent or effect.

Judge Ritz concurs in this note.

*Affirmed.*