SCHMITT, Respondent, vs. SCHMITT and another, Appellants, and FRANKE, Respondent.
SCHMITT, Respondent, vs. FRANKE, imp., Appellant.

*March 5—April 2, 1919.*

*Judicial sales: Suppressing competition: Validity of agreement: Public policy: Fraud.*

1. A finding by the trial court to the effect that an agreement had been made whereby an intending bidder was induced to refrain from bidding at a foreclosure sale of corporate stock, is *held* to be against a clear preponderance of the evidence.
2. An agreement or combination among prospective bidders, under which one is to bid for all at a public judicial sale of

property, is not necessarily contrary to public policy if not made with intent to suppress competition or for any other fraudulent purpose; and where no fraud in fact results the sale should not be set aside, because of such agreement, at the suit of one who did not sustain any damage by reason thereof.

3. The mere fact that plaintiff, who had an interest in corporate stock which was sold at a foreclosure sale, was deprived of such interest by the sale, does not show that an agreement among his former associates by which one of them was to bid in the stock for their joint benefit, thus eliminating plaintiff from the business, was fraudulent or unlawful.

4. *Schmitt v. Franke,* 160 Wis. 347, which was an action for specific performance of the agreement above mentioned, is distinguished. The decision in that case is not binding in this case as being *res judicata,* because there is not identity of parties; nor is it binding under the doctrine of *stare decisis,* the evidence in the cases being materially different and there having been in that case a finding of fraud as a matter of fact.

APPEALS from a judgment of the circuit court for Milwaukee county: MARTIN L. LUECK, Judge. *Reversed.*

This is an independent action in equity commenced by the plaintiff August 20, 1915, in the circuit court for Milwaukee county, for the purpose of vacating an order affirming a foreclosure sale of corporate stock under date of February 16, 1910. From a judgment vacating and setting aside an order of confirmation and ordering a resale of the stock the defendants appealed.

The facts are as follows: June 25, 1907, the parties to this action and one Conrad Schmitt were stockholders in the Schmitt Brothers Tobacco Works, which at or about that time had acquired the property of the Hansen–Schmitt Company, a competitor of the Schmitt Brothers Tobacco Works, the consolidation having been brought about by an exchange of stock in the Schmitt Brothers Tobacco Works for the stock of the Hansen-Schmitt Company. *Mathias F. Schmitt, C. M. Schmitt,* and Conrad Schmitt are brothers. *Mathias F. Schmitt, C. M. Schmitt,* and *Carl W. Walter* were in the active management of the corporation. The defendant *Franke* was a tobacco broker of Louisville, Ken-

tucky, of considerable means, the largest stockholder, and contributed the principal financial support to the company.

On June 25, 1907, an agreement of sale was entered into between *E. C. Franke* as party of the first part, and *Mathias F. Schmitt, C. M. Schmitt, Carl W. Walter,* and Conrad Schmitt as parties of the second part, providing for the sale by *E. C. Franke* to the said parties of the second part of 701 shares of the capital stock of said corporation, the parties of the second part executing to said *Franke* their three promissory notes in payment thereof as follows: one for $11,750, due July 1, 1909; one for $9,320, due July 1, 1910; one for $9,320, due July 1, 1911.   The agreement of sale contained a provision that upon default in the payment of any of said notes those remaining unpaid might, at the option of said *Franke,* be declared due.   Thereafter and before the first note became due disagreements arose between the plaintiff, *Mathias F. Schmitt,* and the others, resulting in his withdrawal from active participation in the affairs of the company and his removal to California.   There was default in the payment of the first note upon its coming due.   Thereupon *Franke* declared the whole amount due.   Extended negotiations occurred between *Franke, C. M. Schmitt,* Conrad Schmitt, and *Walter* with a view of devising some plan by which the former might retain their interest in the stock upon some terms satisfactory to *E. C. Franke.*

It pretty plainly appears that there was a desire on the part of all to eliminate the plaintiff, *Mathias F. Schmitt,* from the company.   No satisfactory arrangements, however, were agreed upon, and in November, 1909, *Franke* brought an action to foreclose the contract of sale.   A foreclosure judgment was entered January 27, 1910, which ordered a sale of the stock, pursuant to which order the stock was sold at public auction February 14, 1910, and sale was in due time confirmed.

It appears that Conrad Schmitt made some effort to place himself in a position to bid at the sale and to that end nego-

tiated with one Epstein, who indicated a certain willingness to advance money which would enable Conrad to bid about $31,000 for the stock at the sale. Conrad now claims that he was induced to refrain from bidding at the sale because of an agreement between himself, his brother *C. M. Schmitt, Carl W. Walter,* and *E. C. Franke* that *Franke* should bid in the stock at the sale for the amount due on the notes plus expenses of sale and thereafter enter into a new arrangement with himself, *C. M. Schmitt,* and *Carl W. Walter* for the sale of the stock upon terms which would enable them eventually to pay therefor and become the owners thereof. This arrangement contemplated the elimination of *Mathias F. Schmitt* from any interest in the company. That there was such an arrangement is denied by *Franke, C. M. Schmitt,* and *Walter.* At the sale the stock was bid in by *Franke* for $31,552.65, being the entire amount which was due on the stock, together with the costs and expenses of the foreclosure and sale.

On the day of and after the sale *Franke* gave to *C. M. Schmitt* and *Carl W. Walter* an option for the purchase of 651 shares of such stock for $31,500.90, plus fees and expenses incurred in the foreclosure suit, which option expired May 15, 1910. *Schmitt* and *Walter* were unable to avail themselves of the option before it expired. Further negotiations followed, and on October 1, 1910, *Franke* entered into another contract of sale with *C. M. Schmitt* and *Carl W. Walter* for the sale of 501 shares of such stock for the sum of $31,000, to be paid upon terms therein indicated, with which contract the said *C. M. Schmitt* and *Carl W. Walter* eventually complied and became the owners of said stock.

This action was brought by *Mathias F. Schmitt* in September, 1915, to set aside the sale and confirmation thereof under the foreclosure action upon the theory that the agreement claimed by Conrad Schmitt to have been entered into which prevented him from bidding at the sale resulted in a chilling of the sale and operated as a fraud upon his rights.

The circuit court found the existence of the agreement claimed by Conrad Schmitt which resulted in his refraining from bidding at the sale, and also found that "after the entry of the judgment of foreclosure and prior to the sale Conrad Schmitt had some negotiations with one Isador Epstein in regard to the raising of money with which to purchase said 701 shares of stock at the sale, but prior to the time said negotiations ceased neither Conrad Schmitt nor said Isador Epstein had considered the raising of an amount of money more than sufficient to pay the principal, interest, and costs due to *E. C. Franke;* that Conrad Schmitt was not able financially to purchase said 701 shares of stock without assistance from others;" and as a conclusion of law it was found that "a fraud was committed upon the plaintiff, *Mathias F. Schmitt,* by the defendants *E. C. Franke, C. M. Schmitt,* and *Carl W. Walter* and Conrad Schmitt in the stifling of competition at the sale."

For the appellants *Schmitt* and *Walter* there were briefs by *Van Dyke, Shaw, Muskat & Van Dyke* of Milwaukee, and oral argument by *James D. Shaw.*

*Frank M. Hoyt* of Milwaukee, for the defendant *Franke.*

*Maurice A. McCabe,* attorney, and *Walter H. Bender,* of counsel, both of Milwaukee, for the respondent *Mathias F. Schmitt.*

Owen, J. The keystone of the arch of plaintiff's case is the alleged agreement between defendants and Conrad Schmitt by which it is claimed that Conrad Schmitt was induced to refrain from bidding at the sale. If the finding to the effect that such an agreement was made be against the clear preponderance of the evidence it completely disposes of plaintiff's case. This feature of the case has received our earnest consideration, and we are convinced that the finding in such behalf is against the clear preponderance of the evidence and cannot be permitted to stand. The finding is supported only by uncorroborated testimony of Conrad Schmitt.

It is flatly denied by the defendants and each of them. It is impeached by documentary evidence in the nature of letters and other correspondence passing between the parties prior to the time of the sale. It is discredited by the testimony of Lawrence A. Olwell, an attorney of this court of high standing and respectability, as well as the testimony of Thomas A. Barker, an attorney at law of Louisville, Kentucky, who acted as *Mr. Franke's* adviser during the negotiations, and the existence of the agreement is utterly inconsistent with the acts of the defendants and the dealings and negotiations between them subsequent to the sale, the evidence as to much of which is of a documentary nature and irrefutable in character. We are convinced that the finding of the existence of the agreement by reason of which Conrad Schmitt claims he refrained from bidding at the sale is against the clear preponderance of the evidence and cannot stand. While this opinion well might end here it is proper to say that the responsibility always felt in setting aside a finding of the trial court is relieved by a consideration of the law applicable to the case. This leads to the same conclusion even though the finding under consideration be left undisturbed.

It will be noted that the court found as a conclusion of law "that a fraud was committed upon the plaintiff, *Mathias Schmitt,* by the defendants *E. C. Franke, C. M. Schmitt, Carl W. Walter,* and Conrad Schmitt in a stifling of competition at the sale." There is no finding of fact to that effect. It is apparent that the trial court adopted plaintiff's contention that any agreement or combination among prospective bidders by virtue of which one bids for all is against public policy and void, irrespective of whether the property sells at a fair price or other fraud results. That doctrine finds support in the earlier cases, but it has been materially modified by modern decisions. It is now quite generally recognized that an arbitrary condemnation of a combination or agreement whereby one of several bids for all as frequently discourages, as it promotes, competition. Many properties are

subjects of sales for which an adequate price could not be secured if pooling of interests be not permitted, as the fair value thereof is beyond the ability of the individual to pay. Courts now look to the purpose of the agreement, and unless it be found that it was entered into with the object of suppressing competition at the sale, or accomplishment of other fraud, the sale will not be set aside by mere reason of the agreement itself. As said in *Woodruff v. Harrington*, 175 Pa. St. 302, 34 Atl. 667, 52 Am. St. Rep. 845:

"Lien creditors, as well as others, may purchase jointly at sheriff's sale, if all be open and fair. A combination of interests for that purpose is not necessarily corrupt. . . . It is . . . the end to be accomplished which makes such a combination lawful or otherwise. If it be to depress the price of the property by artifice, the purchase will be void; if it be to raise the means of payment by contribution, or to divide the property for the accommodation of purchasers, it will be valid. . . . The crucial test of all such arrangements is whether it is fair and without intent to depress the property and get it at an undervalue. The question must in all cases be referred to the jury, and it was error in the court below to rule it as a question of law irrespective of the element of fraud in fact."

In discussing this question in 16 Ruling Case Law, at page 70 it is said:

"The doctrine that would prohibit associations of individuals to bid at the legal public sales of property, as preventing competition, however specious in theory, is too narrow and limited for the practical business of life, and would oftentimes lead inevitably to the evil consequences it was intended to avoid. Instead of encouraging competition it would destroy it, and sales in many instances could be effected only at such a sacrifice as would bring the property within the reach of the means of the individual bidders. . . . The extent to which the doctrine will now be carried therefore seems to embrace only cases of fraudulent acts and combinations having for their object to suppress and stifle fair competition at the sale with the purpose of acquiring the property at less than its fair value."

As a preface to a collation of authorities on this subject in a note to the case of *Coal & Coke R. Co. v. Marple* (70 W. Va. 136, 73 S. E. 261), 38 L. R. A. N. s. 719, the rule is stated thus:

"The authorities all agree that a contract entered into by several persons, under which one of them is to purchase property at public sale for the benefit of all the parties, is void as against public policy, and is ground for setting the sale aside where it appears that it was made to prevent competition at the sale or for any other fraudulent purpose. But the great majority of the cases hold that the mere combination does not of itself amount to such fraud as to render the contract unenforceable as between the parties, or to constitute grounds to set aside the sale. Numerous early decisions holding the mere combination of itself fraudulent and as ground for setting aside the sale have been overruled."

This rule is supported by reason as well as the practical necessities of the present-day business world. Where an agreement of this kind does not suppress competition, result in a sale of property at less than its fair value, nor the accomplishment of any other fraud, a judicial sale should not be set aside at the suit of one who is unable to show that he has sustained injury by reason thereof.

There is no finding of fact in this case that the plaintiff sustained damage or injury by reason of the agreement which the trial court evidently regarded as fraudulent *per se.* It is undisputed that plaintiff was in no position to bid and did not bid at the sale. The trial court found that Conrad Schmitt did not contemplate bidding more than the amount of the judgment plus costs and expenses of the foreclosure suit, which was the exact amount bid by *Franke.* The defendants offered evidence to show that the stock sold for all it was worth, to which the plaintiff objected and the objection was sustained by the court.

The plaintiff is in no position to contend, and in fact does not contend, that the stock sold at less than its actual value. What then is the basis of plaintiff's appeal to a

court of equity?   He utterly fails to show that he has been damaged in any respect.   The wrong which he seeks to redress is the alleged invasion of a mere naked, formal right resulting in no injury to him and which the law no longer regards as inimical to public welfare or against public policy.   To be sure he was deprived of his interest in the stock, but that not only was inevitable, but was the plain purpose of the foreclosure proceedings.   It was the right of the defendants to decline his association longer, and no unlawful means were employed to secure his elimination.   In fact it is not contended, as we understand it, that there was anything actionable in the desire or purpose of the defendants to eliminate him from the business.   The claim is that unlawful means were employed to such end, and this claim, we trust, we have sufficiently answered.

This opinion should not be brought to a close without referring to the case of *Schmitt v. Franke,* 160 Wis. 347, 151 N. W. 793, where the agreement here in question was considered by this court in an action brought against Franke to compel specific performance thereof.   We do not consider ourselves bound thereby upon the doctrine of *res adjudicata* because there is not identity of parties, nor upon the principles of *stare decisis* because the evidence in this case is concededly materially different from the evidence in that.   Furthermore, there was an affirmative finding of fraud in that case as a matter of fact which is lacking here and plainly distinguishes the two cases.   While there may seem to be an inconsistency in results, the conclusion in each case is justified by the record upon which it is founded and the two are in harmony.

*By the Court.*—Judgment reversed, and the case remanded with instructions to enter judgment dismissing the plaintiff's complaint.

KERWIN and ROSENBERRY, JJ., took no part.